DICKMAN ET AL. *v.* COMMISSIONER OF INTERNAL
REVENUE

No. 82–1041.   Argued November 1, 1983—Decided February 22, 1984

BURGER, C. J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, BLACKMUN, STEVENS, and O'CONNOR, JJ., joined. POWELL, J., filed a dissenting opinion, in which REHNQUIST, J., joined, *post*, p. 345.

*Frank P. Riggs* argued the cause for petitioners. With him on the briefs were *Guy S. Emerich, Vester T. Hughes, Jr., M. David Bryant, Jr.*, and *Kathryn G. Henkel.*

*Deputy Solicitor General Wallace* argued the cause for respondent. With him on the brief were *Solicitor General Lee, Assistant Attorney General Archer, Harriet S. Shapiro, Michael L. Paup, Jonathan S. Cohen*, and *Farley P. Katz.**

CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to resolve a conflict among the Circuits as to whether intrafamily, interest-free demand loans result in taxable gifts of the value of the use of the money lent.

## I

### A

Paul and Esther Dickman were husband and wife; Lyle Dickman was their son. Paul, Esther, Lyle, and Lyle's wife

---

*Briefs of *amici curiae* urging reversal were filed for D'Ancona & Pflaum by *Byron S. Miller* and *Alan L. Reinstein;* and for Jones, Day, Reavis & Pogue by *Erwin N. Griswold.*

and children were the owners of Artesian Farm, Inc. (Artesian), a closely held Florida corporation. Between 1971 and 1976, Paul and Esther loaned substantial sums to Lyle and Artesian. Over this 5-year interval, the outstanding balances for the loans from Paul to Lyle varied from $144,715 to $342,915; with regard to Paul's loans to Artesian, the outstanding balances ranged from $207,875 to $669,733. During the same period, Esther loaned $226,130 to Lyle and $68,651 to Artesian. With two exceptions, all the loans were evidenced by demand notes bearing no interest.[1]

Paul Dickman died in 1976, leaving a gross estate for federal estate tax purposes of $3,464,011. The Commissioner of Internal Revenue audited Paul Dickman's estate and determined that the loans to Lyle and Artesian resulted in taxable gifts to the extent of the value of the use of the loaned funds.[2] The Commissioner then issued statutory notices of gift tax deficiency both to Paul Dickman's estate and to Esther Dickman.[3]

---

[1] One exception was a loan made to Lyle on "open account" and payable on demand; the parties have agreed that the gift tax consequences of this "open account" loan are identical to those of the loans evidenced by the demand notes. 41 TCM 620, 623, n. 4 (1980), ¶ 80,575 P-H Memo TC, at 2427, n. 4. The other exception was a loan made to Artesian and memorialized by a no-interest note having a term of 10 years, the characterization of which has been a matter of dispute. Although the Tax Court held that this loan to Artesian was in substance a demand loan, *id.*, at 624, ¶ 80,575 P-H Memo TC, at 2428, the Court of Appeals declined to reach the issue, suggesting that the Tax Court consider the valuation consequences of the loan's characterization on remand. 690 F. 2d 812, 814, n. 3 (CA11 1982). For present purposes, we shall refer to all the loans from Paul and Esther Dickman to Lyle and Artesian as demand loans.

[2] In valuing the gifts, the Commissioner multiplied the loan balances outstanding at the end of each taxable quarter by interest rates ranging from six percent to nine percent per annum. These interest rates were taken from § 6621 of the Internal Revenue Code of 1954, 26 U. S. C. § 6621, made applicable by Code § 6601 to underpayments of tax.

[3] The Commissioner asserted a $42,212.91 deficiency against Paul Dickman's estate and a $41,109.78 deficiency against Esther Dickman.

Esther Dickman and the estate, petitioners here, sought redetermination of the deficiencies in the Tax Court. Reaffirming its earlier decision in *Crown* v. *Commissioner*, 67 T. C. 1060 (1977), aff'd, 585 F. 2d 234 (CA7 1978), the Tax Court concluded that intrafamily, interest-free demand loans do not result in taxable gifts. 41 TCM 620, 623 (1980), ¶ 80,575 P-H Memo TC, at 2428. Because the Tax Court determined that all the loans to Lyle and Artesian were made payable on demand, it held that the loans were not subject to the federal gift tax. *Id.*, at 624, ¶ 80,575 P-H Memo TC, at 2428.

B

The United States Court of Appeals for the Eleventh Circuit reversed, holding that gratuitous interest-free demand loans give rise to gift tax liability. 690 F. 2d 812, 819 (1982). Reviewing the language and history of the gift tax provisions of the Internal Revenue Code of 1954 (Code), 26 U. S. C. § 2501 *et seq.*, the Court of Appeals concluded that Congress intended the gift tax to have the broadest and most comprehensive coverage possible. The court reasoned that the making of an interest-free demand loan constitutes a "transfer of property by gift" within the meaning of 26 U. S. C. § 2501(a)(1), and accordingly is subject to the gift tax provisions of the Code. In so holding, the Court of Appeals squarely rejected the contrary position adopted by the United States Court of Appeals for the Seventh Circuit in *Crown* v. *Commissioner*, 585 F. 2d 234 (1978). We granted certiorari to resolve this conflict, 459 U. S. 1199 (1983); we affirm.

II

A

The statutory language of the federal gift tax provisions purports to reach any gratuitous transfer of any interest in property. Section 2501(a)(1) of the Code imposes a tax upon "the transfer of property by gift." Section 2511(a) highlights

the broad sweep of the tax imposed by § 2501, providing in pertinent part:

"Subject to the limitations contained in this chapter, the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible . . . ."

The language of these statutes is clear and admits of but one reasonable interpretation: transfers of property by gift, by whatever means effected, are subject to the federal gift tax.

The Committee Reports accompanying the Revenue Act of 1932, ch. 209, 47 Stat. 169, which established the present scheme of federal gift taxation, make plain that Congress intended the gift tax statute to reach all gratuitous transfers of any valuable interest in property. Among other things, these Reports state:

"The terms 'property,' 'transfer,' 'gift,' and 'indirectly' are used in the broadest and most comprehensive sense; the term 'property' reaching every species of right or interest protected by law and having an exchangeable value.

"The words 'transfer . . . by gift' and 'whether . . . direct or indirect' are designed to cover and comprehend all transactions . . . whereby, and to the extent . . . that, property or a property right is donatively passed to or conferred upon another, regardless of the means or the device employed in its accomplishment." H. R. Rep. No. 708, 72d Cong., 1st Sess., 27–28 (1932); S. Rep. No. 665, 72d Cong., 1st Sess., 39 (1932).

The plain language of the statute reflects this legislative history; the gift tax was designed to encompass all transfers of property and property *rights* having significant value.[4]

---

[4] The comprehensive scope of the gift tax, reflected by its statutory language and legislative history, is analogous to that of § 61 of the Code, 26 U. S. C. § 61, which defines gross income as "all income from whatever

On several prior occasions, this Court has acknowledged the expansive sweep of the gift tax provisions. In *Commissioner* v. *Wemyss*, 324 U. S. 303, 306 (1945), the Court explained that

> "Congress intended to use the term 'gifts' in its broadest and most comprehensive sense . . . [in order] to hit all the protean arrangements which the wit of man can devise that are not business transactions within the meaning of ordinary speech."

The Court has also noted that the language of the gift tax statute "is broad enough to include property, however conceptual or contingent," *Smith* v. *Shaughnessy*, 318 U. S. 176, 180 (1943), so as "to reach every kind and type of transfer by gift," *Robinette* v. *Helvering*, 318 U. S. 184, 187 (1943). Thus, the decisions of this Court reinforce the view that the gift tax should be applied broadly to effectuate the clear intent of Congress.

## B

In asserting that interest-free demand loans give rise to taxable gifts, the Commissioner does not seek to impose the gift tax upon the principal amount of the loan, but only upon the reasonable value of the use of the money lent. The taxable gift that assertedly results from an interest-free demand loan is the value of receiving and using the money without incurring a corresponding obligation to pay interest along with the loan's repayment.[5] Is such a gratuitous transfer of the

---

source derived." Section 61 has long been interpreted to include all forms of income except those specifically excluded from its reach. See, *e. g.*, *Commissioner* v. *Glenshaw Glass Co.*, 348 U. S. 426 (1955). Similarly, the gift tax applies to any "transfer of property by gift," Code § 2501(a)(1), "[s]ubject to the limitations contained in this chapter," Code § 2511(a). Accordingly, absent an express exclusion from its provisions, any transfer meeting the statutory requirements must be held subject to the gift tax.

[5] The Commissioner's tax treatment of interest-free demand loans may perhaps be best understood as a two-step approach to such transactions. Under this theory, such a loan has two basic economic components: an

right to use money a "transfer of property" within the intendment of § 2501(a)(1)?

We have little difficulty accepting the theory that the use of valuable property—in this case money—is itself a legally protectible property interest. Of the aggregate rights associated with any property interest, the right of use of property is perhaps of the highest order. One court put it succinctly:

> " 'Property' is more than just the physical thing—the land, the bricks, the mortar—it is also the sum of all the rights and powers incident to ownership of the physical thing. It is the tangible and the intangible. Property is composed of constituent elements and of these elements the right to *use* the physical thing to the exclusion of others is the most essential and beneficial. Without this right all other elements would be of little value . . . ." *Passailaigue* v. *United States*, 224 F. Supp. 682, 686 (MD Ga. 1963) (emphasis in original).[6]

What was transferred here was the use of a substantial amount of cash for an indefinite period of time. An analogous interest in real property, the use under a tenancy at will, has long been recognized as a property right. *E. g.*, Restatement (Second) of Property § 1.6 (1977); 3 G. Thompson, Commentaries on the Modern Law of Real Property § 1020 (J. Grimes ed. 1980). For example, a parent who grants to a child the rent-free, indefinite use of commercial property having a reasonable rental value of $8,000 a month has clearly transferred a valuable property right. The

_____

arm's-length loan from the lender to the borrower, on which the borrower pays the lender a fair rate of interest, followed by a gift from the lender to the borrower in the amount of that interest. See *Crown* v. *Commissioner*, 585 F. 2d 234, 240 (CA7 1978).

[6] See also *Barker* v. *Publishers' Paper Co.*, 78 N. H. 571, 573, 103 A. 757, 758 (1918) ("In its final analysis, the property in any thing consists in the use"); 1 G. Thompson, Commentaries on the Modern Law of Real Property § 5, p. 31 (J. Grimes ed. 1980) ("The use of a given object is the most essential and beneficial quality or attribute of property").

transfer of $100,000 in cash, interest-free and repayable on demand, is similarly a grant of the use of valuable property. Its uncertain tenure may reduce its value, but it does not undermine its status as property. In either instance, when the property owner transfers to another the right to use the object, an identifiable property interest has clearly changed hands.

The right to the use of $100,000 without charge is a valuable interest in the money lent, as much so as the rent-free use of property consisting of land and buildings. In either case, there is a measurable economic value associated with the use of the property transferred. The value of the use of money is found in what it can produce; the measure of that value is interest—"rent" for the use of the funds. We can assume that an interest-free loan for a fixed period, especially for a prolonged period, may have greater value than such a loan made payable on demand, but it would defy common human experience to say that an intrafamily loan payable on demand is not subject to accommodation; its value may be reduced by virtue of its demand status, but that value is surely not eliminated.

This Court has noted in another context that the making of an interest-free loan results in the transfer of a valuable economic right:

> "It is virtually self-evident that extending interest-free credit for a period of time is equivalent to giving a discount equal to the value of the use of the purchase price for that period of time." *Catalano, Inc.* v. *Target Sales, Inc.*, 446 U. S. 643, 648 (1980) *(per curiam).*

Against this background, the gift tax statutes clearly encompass within their broad sweep the gratuitous transfer of the use of money. Just as a tenancy at will in real property is an estate or interest in land, so also is the right to use money a cognizable interest in personal property. The right to use money is plainly a valuable right, readily measurable by reference to current interest rates; the vast banking in-

dustry is positive evidence of this reality. Accordingly, we conclude that the interest-free loan of funds is a "transfer of property by gift" within the contemplation of the federal gift tax statutes.[7]

## C

Our holding that an interest-free demand loan results in a taxable gift of the use of the transferred funds is fully consistent with one of the major purposes of the federal gift tax statute: protection of the estate tax and the income tax. The legislative history of the gift tax provisions reflects that Congress enacted a tax on gifts to supplement existing estate and income tax laws. H. R. Rep. No. 708, at 28; S. Rep. No. 665, at 40; see also 65 Cong. Rec. 3119–3120, 8095–8096 (1924); Harriss, Legislative History of Federal Gift Taxation, 18 Taxes 531, 536 (1940). Failure to impose the gift tax on interest-free loans would seriously undermine this estate and income tax protection goal.

---

[7] Petitioners argue that no gift tax consequences should attach to interest-free demand loans because no "transfer" of property occurs at the time the loan is made. Petitioners urge that the term "transfer" "connotes a discrete, affirmative act whereby a person conveys something to another person, not a continuous series of minute failures to require return of something loaned." Brief for Petitioners 22. We decline to adopt that construction of the statute.

In order to make a taxable gift, a transferor must relinquish dominion and control over the transferred property. Treas. Reg. § 25.2511–2(b), 26 CFR § 25.2511–2(b) (1983). At the moment an interest-free demand loan is made, the transferor has not given up all dominion and control; he could terminate the transferee's use of the funds by calling the loan. As time passes without a demand for repayment, however, the transferor allows the use of the principal to pass to the transferee, and the gift becomes complete. See *ibid.;* Rev. Rul. 69–347, 1969–1 Cum. Bull. 227; Rev. Rul. 69–346, 1969–1 Cum. Bull. 227. As the Court of Appeals realized, 690 F. 2d, at 819, the fact that the transferor's dominion and control over the use of the principal are relinquished over time will become especially relevant in connection with the valuation of the gifts that result from such loans; it does not, however, alter the fact that the lender has made a gratuitous transfer of property subject to the federal gift tax.

A substantial no-interest loan from parent to child creates significant tax benefits for the lender quite apart from the economic advantages to the borrower. This is especially so when an individual in a high income tax bracket transfers income-producing property to an individual in a lower income tax bracket, thereby reducing the taxable income of the high-bracket taxpayer at the expense, ultimately, of all other tax-payers and the Government. Subjecting interest-free loans to gift taxation minimizes the potential loss to the federal fisc generated by the use of such loans as an income tax avoidance mechanism for the transferor. Gift taxation of interest-free loans also effectuates Congress' desire to sup-plement the estate tax provisions. A gratuitous transfer of income-producing property may enable the transferor to avoid the future estate tax liability that would result if the earnings generated by the property—rent, interest, or divi-dends—became a part of the transferor's estate. Imposing the gift tax upon interest-free loans bolsters the estate tax by preventing the diminution of the transferor's estate in this fashion.

### III

Petitioners contend that administrative and equitable con-siderations require a holding that no gift tax consequences result from the making of interest-free demand loans. In support of this position, petitioners advance several policy arguments; none withstands studied analysis.

### A

Petitioners first advance an argument accepted by the Tax Court in *Crown* v. *Commissioner:*

"[O]ur income tax system does not recognize unrealized earnings or accumulations of wealth and no taxpayer is under any obligation to continuously invest his money for a profit. The opportunity cost of either letting one's money remain idle or suffering a loss from an unwise investment is not taxable merely because a profit *could*

*have been made* from a wise investment." 67 T. C., at 1063–1064.

Thus, petitioners argue, an interest-free loan should not be made subject to the gift tax simply because of the possibility that the money lent *might* have enhanced the transferor's taxable income or gross estate had the loan never been made.

This contention misses the mark. It is certainly true that no law requires an individual to invest his property in an income-producing fashion, just as no law demands that a transferor charge interest or rent for the use of money or other property. An individual may, without incurring the gift tax, squander money, conceal it under a mattress, or otherwise waste its use value by failing to invest it. Such acts of consumption have nothing to do with lending money at no interest. The gift tax is an excise tax on *transfers* of property; allowing dollars to lie idle involves no transfer. If the taxpayer chooses not to waste the use value of money, however, but instead transfers the use to someone else, a taxable event has occurred. That the transferor himself could have consumed or wasted the use value of the money without incurring the gift tax does not change this result. Contrary to petitioners' assertion, a holding in favor of the taxability of interest-free loans does not impose upon the transferor a duty profitably to invest; rather, it merely recognizes that certain tax consequences inevitably flow from a decision to make a "transfer of property by gift." 26 U. S. C. § 2501(a)(1).

B

Petitioners next attack the breadth of the Commissioner's view that interest-free demand loans give rise to taxable gifts. Carried to its logical extreme, petitioners argue, the Commissioner's rationale would elevate to the status of taxable gifts such commonplace transactions as a loan of the proverbial cup of sugar to a neighbor or a loan of lunch money to a colleague. Petitioners urge that such a result is an untenable intrusion by the Government into cherished zones

of privacy, particularly where intrafamily transactions are involved.

Our laws require parents to provide their minor offspring with the necessities and conveniences of life; questions under the tax law often arise, however, when parents provide more than the necessities, and in quantities significant enough to attract the attention of the taxing authorities. Generally, the legal obligation of support terminates when the offspring reach majority. Nonetheless, it is not uncommon for parents to provide their adult children with such things as the use of cars or vacation cottages, simply on the basis of the family relationship. We assume that the focus of the Internal Revenue Service is not on such traditional familial matters. When the Government levies a gift tax on routine neighborly or familial gifts, there will be time enough to deal with such a case.

Moreover, the tax law provides liberally for gifts to both family members and others; within the limits of the prescribed statutory exemptions, even substantial gifts may be entirely tax free. First, under § 2503(e) of the Code, 26 U. S. C. § 2503(e) (1982 ed.), amounts paid on behalf of an individual for tuition at a qualified educational institution or for medical care are not considered "transfer[s] of property by gift" for purposes of the gift tax statutes. More significantly, § 2503(b) of the Code provides an annual exclusion from the computation of taxable gifts of $10,000 per year, per donee; this provision allows a taxpayer to give up to $10,000 annually to each of any number of persons, without incurring any gift tax liability.[8] The "split gift" provision of Code § 2513(a), which effectively enables a husband and wife to give each object of their bounty $20,000 per year without

---

[8] During the taxable periods involved in this case, Code § 2503(b) provided an annual exclusion of $3,000 per year, per donee. Section 441(a) of the Economic Recovery Tax Act of 1981, Pub. L. 97–34, 95 Stat. 319, amended § 2503(b) by raising the annual exclusion to $10,000 for transfers made after December 31, 1981.

liability for gift tax, further enhances the ability to transfer significant amounts of money and property free of gift tax consequences.[9] Finally, should a taxpayer make gifts during one year that exceed the § 2503(b) annual gift tax exclusion, no gift tax liability will result until the unified credit of Code § 2505 has been exhausted.[10] These generous exclusions, exceptions, and credits clearly absorb the sorts of *de minimis* gifts petitioners envision and render illusory the administrative problems that petitioners perceive in their "parade of horribles."

### C

Finally, petitioners urge that the Commissioner should not be allowed to assert the gift taxability of interest-free demand loans because such a position represents a departure from prior Internal Revenue Service practice. This contention rests on the fact that, prior to 1966, the Commissioner had not construed the gift tax statutes and regulations to authorize the levying of a gift tax on the value of the use of money or property. See *Crown* v. *Commissioner*, 585 F. 2d, at 241; *Johnson* v. *United States*, 254 F. Supp. 73 (ND Tex. 1966). From this they argue that it is manifestly

---

[9] Under Code § 2513(a), 26 U. S. C. § 2513(a), a husband and wife may elect to treat a gift in fact made by one spouse as having been made one-half by each spouse. Simply put, the net effect of this "gift-splitting" provision is to double the gift tax exclusions and exemptions applicable to each gift by the donor. In some states, of course, community property laws achieve the same "gift-splitting" result. See generally C. Lowndes, R. Kramer, & J. McCord, Federal Estate and Gift Taxes § 35.1 (3d ed. 1974).

[10] Under the gift tax system in effect during the taxable periods involved in this case, former Code § 2521 provided a lifetime gift tax exemption of $30,000 for each taxpayer. Section 2001(b)(3) of the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1849, replaced the lifetime exemption with a unified credit. As modified by the Economic Recovery Tax Act of 1981, *supra,* the unified credit provided by Code § 2505 is scheduled to increase each year until 1987; at that time, the credit will total $192,800, the equivalent of a lifetime exemption of $600,000 per taxpayer. See Code § 2505(b), 26 U. S. C. § 2505(b) (1982 ed.).

unfair to permit the Commissioner to impose the gift tax on the transactions challenged here.

Even accepting the notion that the Commissioner's present position represents a departure from prior administrative practice, which is by no means certain,[11] it is well established that the Commissioner may change an earlier interpretation of the law, even if such a change is made retroactive in effect. *E. g., Dixon* v. *United States,* 381 U. S. 68, 72–75 (1965); *Automobile Club of Michigan* v. *Commissioner,* 353 U. S. 180, 183–184 (1957). This rule applies even though a taxpayer may have relied to his detriment upon the Commissioner's prior position. *Dixon* v. *United States, supra,* at 73. The Commissioner is under no duty to assert a particular position as soon as the statute authorizes such an interpretation.[12] See also *Bob Jones University* v. *United States,* 461 U. S. 574 (1983). Accordingly, petitioners' "taxpayer reliance" argument is unavailing.[13]

---

[11] The Treasury Regulations implementing the gift tax provisions have always reflected the broad scope of the statutory language. See Treas. Regs. 79, Art. 2 (1933); Treas. Regs. 79, Art. 2 (1936); Treas. Regs. 108, § 86.2(a) (1943). The regulation presently in force is virtually identical to those in effect during the preceding five decades; it provides:

"The gift tax also applies to gifts indirectly made. Thus, all transactions whereby property or property rights or interests are gratuitously passed or conferred upon another, regardless of the means or device employed, constitute gifts subject to tax." Treas. Reg. § 25.2511–1(c), 26 CFR § 25.2511–1(c) (1983).

The longstanding interpretation of the statute embodied in these regulations indicates that the Commissioner's allegedly novel assertion in 1966 regarding the gift taxability of interest-free demand loans was not without a reasonable and well-established foundation.

[12] Indeed, the explanation for the dearth of pre-1966 cases presenting this precise issue is probably economic; the low interest rates that prevailed until recent years diminished the attractiveness of the interest-free demand loan as a tax-planning device and reduced the likelihood that the value of such loans would exceed the annual gift tax exclusion.

[13] Petitioners' detrimental reliance argument must fail for an additional reason. The interest-free demand loans challenged by the Commissioner in this case were made between 1971 and 1976. The Commissioner first

## IV

As we have noted, *supra*, at 341–342, Congress has provided generous exclusions and credits designed to reduce the gift tax liability of the great majority of taxpayers. Congress clearly has the power to provide a similar exclusion for the gifts that result from interest-free demand loans. Any change in the gift tax consequences of such loans, however, is a legislative responsibility, not a judicial one. Until such a change occurs, we are bound to effectuate Congress' intent to protect the estate and income tax systems with a broad and comprehensive tax upon all "transfer[s] of property by gift." Cf. *Diedrich* v. *Commissioner*, 457 U. S. 191, 199 (1982).

We hold, therefore, that the interest-free demand loans shown by this record resulted in taxable gifts of the reasonable value of the use of the money lent.[14] Accordingly, the

---

litigated the question of the gift taxability of such loans in *Johnson* v. *United States*, 254 F. Supp. 73 (ND Tex. 1966). Six years later, in Rev. Rul. 73–61, 1973–1 Cum. Bull. 408, the Commissioner formally announced the position that interest-free demand loans give rise to taxable gifts. Because approximately half the loans in this case were made after the Commissioner had issued Rev. Rul. 73–61, petitioners are hardly in a position to argue that they relied to their detriment on a different interpretation of the gift tax statute.

[14] In determining the value of the gifts made by Paul and Esther Dickman to Lyle Dickman and Artesian, the Commissioner applied to the loan balances outstanding during each taxable quarter certain interest rates derived from § 6621 of the Code, 26 U. S. C. § 6621. See n. 2, *supra*. The Court of Appeals declined to address the question, but remanded to the Tax Court for consideration of the method by which the gifts associated with interest-free demand loans should be valued. 690 F. 2d, at 820, and n. 11. The valuation issue is therefore not presented on the record before us. We note, however, that to support a gift tax on the transfer of the use of $100,000 for one year, the Commissioner need not establish that the funds lent did in fact produce a particular amount of revenue; it is sufficient for the Commissioner to establish that a certain yield could readily be secured and that the reasonable value of the use of the funds can be reliably ascertained.

judgment of the United States Court of Appeals for the Eleventh Circuit is

*Affirmed.*

JUSTICE POWELL, with whom JUSTICE REHNQUIST joins, dissenting.

The Court's decision today rejects a longstanding principle of taxation, and creates in its stead a new and anomalous rule of law. Such action is best left to Congress.[1]

## I

The Internal Revenue Service's attempts to assess gift taxes on interest-free demand loans is a relatively new development in the field of tax law. The gift tax provisions of the Internal Revenue Code were enacted in 1932.[2] For 34 years—a third of a century—the IRS enforced these provisions without any intimation that an interest-free loan would have gift tax consequences. The IRS first pursued its present position in 1966 in *Johnson* v. *United States*, 254 F. Supp.

---

[1] In *United States* v. *Byrum*, 408 U. S. 125 (1972), the Court stated:

"Courts properly have been reluctant to depart from an interpretation of tax law which has been generally accepted when the departure could have potentially far-reaching consequences. When a principle of taxation requires re-examination, Congress is better equipped than a court to define precisely the type of conduct which results in tax consequences." *Id.*, at 135.

[2] See Revenue Act of 1932, ch. 209, 47 Stat. 169. The provisions of the gift tax code at issue in this case, 26 U. S. C. §§ 2501(a)(1) and 2511(a), have remained virtually unchanged since its original enactment in 1932. Section 501 of the 1932 Act provided:

"(a) For the calendar year 1932 and each calendar year thereafter a tax, computed as provided in section 502, shall be imposed upon the transfer during such calendar year by any individual, resident or nonresident, of property by gift.

"(b) The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible . . . ."

73 (ND Tex.).[3]   The District Court in *Johnson* rejected the argument that taxpayers who have made large interest-free loans also have made gifts equal to the value of the use of the money lent.   *Id.*, at 77.   The Commissioner did not appeal the *Johnson* decision.   Indeed, he waited seven years to announce his nonacquiescence in the outcome of that case.   See Rev. Rul. 73–61, 1973–1 Cum. Bull. 408.

In 1977, the Commissioner first raised the issue before the Tax Court in *Crown* v. *Commissioner*, 67 T. C. 1060.   Relying on the *Johnson* court's holding and the relative novelty of the Commissioner's position, the Tax Court refused to assess gift taxes on interest that *could have been* earned on borrowed money.   *Id.*, at 1063.   The Court of Appeals for the Seventh Circuit affirmed the decision.   585 F. 2d 234 (1978). The Commissioner did not seek review of the *Crown* decision in this Court.   He did announce promptly the Service's nonacquiescence.

The Tax Court reiterated its position in 1980 in the case *sub judice*.   Not until 1982, when the Court of Appeals for the Eleventh Circuit reversed the Tax Court in this case, had any court accepted the Commissioner's belated interpretation of § 2501(a)(1).[4]   During the 18-year period that the

---

[3] The Court purports to find a "reasonable and well-established foundation" for that position in Treas. Reg. § 25.2511–1(c).   *Ante*, at 343, n. 11. The Court relies on the term "gift indirectly made" as contemplating an interest-free loan.   The flaw in this reliance is that the regulations explicitly express a contrary intent: "A gift is *incomplete* in every instance in which a donor reserves the power to revest the beneficial title to the property in himself."   Treas. Reg. § 25.2511–2(c) (emphasis added).   The language in both sections originated in the 1933 regulations.   See Treas. Reg. 79, Arts. 2 and 3 (1933).

[4] The Commissioner has met with an equal lack of success in his attempts to impute interest on interest-free loans and include it in the gross income of the borrower.   Each of the seven Federal Courts of Appeals that has considered the question has refused to attach federal income tax consequences to interest-free loans in the absence of congressional action on the subject.   See *Hardee* v. *United States*, 708 F. 2d 661 (CA Fed. 1983); *Parks* v. *Commissioner*, 686 F. 2d 408 (CA6 1982); *Baker* v. *Commissioner*, 677 F. 2d 11 (CA2 1982); *Commissioner* v. *Greenspun*, 670 F. 2d

Commissioner has pursued this position, Congress has not attempted to settle the controversy through legislation.[5]

Gift taxation, like most forms of federal taxation, is a complex area, made all the more complex by Congress' frequent amendment of the underlying statute. Because the tax system is basically one of self-assessment, complexities and uncertainties in the gift taxation area put a heavy burden on taxpayers who conscientiously try to adhere to the dictates of the Tax Code. Courts should make a conscious effort to minimize this burden by refraining from any action that would destabilize an understanding of the tax laws long accepted both by the IRS and taxpayers.

As the above chronology illustrates, until 1982, a longstanding principle of gift tax law, supported by IRS inaction and judicial opinion, was that interest-free demand loans had no gift tax significance. Relying on this principle, taxpayers made loans, tax commentators suggested making loans,[6] and

---

123 (CA9 1982); *Beaton* v. *Commissioner*, 664 F. 2d 315 (CA1 1981); *Martin* v. *Commissioner*, 649 F. 2d 1133 (CA5 1981); *Suttle* v. *Commissioner*, 625 F. 2d 1127 (CA4 1980).

[5] During the period between the *Johnson* decision and the Court of Appeals' decision in this case, Congress amended the gift tax statute on eight separate occasions. See Economic Recovery Tax Act of 1981, Pub. L. 97–34, 95 Stat. 172; Revenue Act of 1978, Pub. L. 95–600, 92 Stat. 2763; Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520; Internal Revenue Code Amendments of 1974, Pub. L. 93–625, 88 Stat. 2108; Excise, Estate, and Gift Tax Adjustment Act of 1970, Pub. L. 91–614, 84 Stat. 1836; Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 487; Foreign Investors Tax Act of 1966, Pub. L. 89–809, 80 Stat. 1539; Pub. L. 89–365, 80 Stat. 32. Although Congress is presumed to be aware of judicial interpretations of a statute, none of the eight amending Acts altered the *Johnson* and *Crown* courts' interpretation of the statute.

[6] See, *e. g.*, Edwards, What Planning Opportunities Does CA–7's No-Gift-Tax Holding in Crown Open Up?, 50 J. Tax. 168, 170 (1979); Mitchell, Interest-Free Loans: Opportunities For Tax Planning, 65 A. B. A. J. 634, 636 (1979); Taicher, How to Use Interest-Free Loans in Family Tax Planning, 11 Practical Accountant 24 (Sept. 1978); Cooper, A Voluntary Tax? New Perspectives on Sophisticated Estate Tax Avoidance, 77 Colum. L. Rev. 161, 186 (1977); Tidwell, Lester Crown Points the Way to Estate Tax Reduction Under the 1976 Tax Reform Act, 55 Taxes 651, 655 (1977).

tax counselors used loans as integral parts of complex taxation minimization plans.[7]  In my view, petitioners' reliance also was justified.

Despite this justified reliance, the Court today subjects potentially all interest-free loans to gift taxation.  The adverse effects of the Court's holding could be substantial.  Many taxpayers may have used interest-free loans as an important part of a comprehensive plan to sell their business to a son, to send a daughter to medical school, or to provide for the support of an elderly parent.  Such plans are not revamped easily.  In addition, the recipients of the loans may not be in a position to help the taxpayers/lenders avoid future gift tax liability by making immediate repayment.  The borrowed funds may have been invested in fixed assets or the borrowers simply may have spent the money.  The result, in any event, is the assessment of gift taxes that might have been avoided lawfully if the taxpayer could have anticipated the Court's holding in this case.  In light of the Commissioner's decision over a 34-year span to attach no significance to such loans, and his lack of success over the past 18 years in attempting to tax such loans, the Court of Appeals' decision is so fundamentally unfair that this Court should be unwilling to add its *imprimatur*.

## II

There can be little doubt that the courts are not the best forum for consideration of the ramifications of the gift taxation of interest-free loans.  Congress is the body that is best equipped to determine the rules that should govern. *United States* v. *Byrum*, 408 U. S. 125, 135 (1972); *Commissioner* v. *Brown*, 380 U. S. 563, 579 (1965).  The Court implies that Congress has considered this issue and decided that interest-free loans involve a "transfer" of the use-value of the

---

[7] One indication of the role that tax counselors have played in the use of tax-free loans is the fact that two law firms filed *amicus* briefs in this case on behalf of themselves and in support of petitioners' position.

money. The Court bases its position in large part on a "plain language" argument. It states: "The language of [§§ 2501(a)(1) and 2511(a)] is clear and admits of but one reasonable interpretation . . . ." *Ante*, at 334. The Court also states that the Committee Reports in 1932 "make plain" that Congress intended to tax all "transfers" such as those involved in this case.

This is a singularly curious argument. In effect, the Court is saying that for 34 years (1932 until 1966)—despite the plain language of the statute and clear intention of Congress—the Commissioner slept on the rights of the United States. Moreover, in view of his relative inactivity until this suit was instituted in 1980 and pursued on appeal,[8] it hardly can be said that the Commissioner was diligent if the Court today is correct as to what Congress "plainly" instructed him to do. Interestingly, until 1982 all three of the courts that had considered these statutes had found their language far from plain. In light of the apparent difficulty that the Commissioner and the IRS have had in discerning legislative intent from the statutory provisions at issue here, the preferable course would be to await a clear directive from Congress. Nevertheless, the Court, rather than deferring to a legislative resolution of the serious problems associated with this field, adopts an open-ended interpretation of § 2501(a) not even advanced until 1966 and not accepted by any court until 1982.

The most troublesome issue generated by the Court's opinion is the scope of its new reading of the statute. The Court does not limit its holding to interest-free loans of money. The Court states: "We have little difficulty accepting the theory that the use of valuable property . . . is itself a legally protectible property interest." *Ante*, at 336. Under this

---

[8] As noted *supra*, at 346, the Commissioner did not appeal the District Court's holding in *Johnson*, delayed for seven years before deciding to announce his nonacquiescence, and did not seek review by this Court of the Seventh Circuit's opinion in *Crown*.

theory, potential tax liability may arise in a wide range of situations involving the unrecompensed use of property. Examples could include the rent-free use of a home by a child over the age of minority who lives with his parents, or by a parent over the age of self-support who lives with her child. Taken to its logical extreme, this theory would make the loan of a car for a brief period a potentially taxable event.

The possibility that the generous use by friends or family of property such as homes and even spare bedrooms could result in the imposition of gift tax liability highlights the valuation problems that certainly will result from the Court's holding. It is often difficult to place a value on outright ownership of items of real and personal property. Those difficulties multiply when the interest to be valued is the *use* of the property for varying lengths of time. Even in the simplest case—where the property that is borrowed is cash—valuation problems arise. In the three decided cases in which the Commissioner belatedly pursued the theory that the Court adopts today, the Service used three different methods for determining the interest rate that should be used to establish the use-value of the borrowed money.[9] Thus, it is clear that the Court's decision will generate substantial valuation problems.

---

[9] In *Johnson* v. *United States*, 254 F. Supp. 73 (ND Tex. 1966), the Service apparently computed the amount of the gift using the interest rate specified in the regulations for valuing annuities, life estates, terms for years, remainders, and reversions. *Id.*, at 76; see Treas. Reg. § 25.2512–5. In *Crown* v. *Commissioner*, 67 T. C. 1060 (1977), the Service used a rate that it considered reasonable under the circumstances. *Id.*, at 1061. In this case, the rate was that specified in IRC § 6621 for determining interest due on underpayments or refunds of taxes. 690 F. 2d 812, 814, n. 4 (CA11 1982). The Service has urged yet another method in a recently docketed Tax Court case, *LaRosa* v. *Commissioner*, No. 29632–82. In *LaRosa*, the Service has arrived at a separate interest rate for each month the loan was outstanding. The monthly interest rates were provided by an "expert" who relied on estimated fair market interest rates considering the creditworthiness of the borrowers. On an annualized basis, the rates used in *LaRosa* range from 12.5% to 31.1%.

The Court downplays the significance of its decision by "assum[ing] that the focus of the Internal Revenue Service is not on such traditional familial matters [as the use of cars or homes]." *Ante,* at 341. The Court also concludes that the Tax Code's "generous exclusions, exceptions, and credits clearly absorb the sorts of *de minimis* gifts petitioners envision and render illusory the administrative problems that petitioners perceive." *Ante,* at 342. In effect, the Court has chosen to turn its back on the ramifications of its decision.

The Court, aware of the potential for abuse of its new interpretation, "assume[s]" that the Internal Revenue Service will exercise the power conferred on it in a reasonable way. *Ante,* at 341. This assumption is not likely to afford much comfort to taxpayers and the lawyers and accountants who advise them. The Commissioner, acting with utmost goodwill, is confronted with a dilemma. This Court today holds that the plain language of the statute mandates, and that Congress intended, the "gift tax statute to reach *all* gratuitous transfers of *any* valuable interest in property." *Ante,* at 334 (emphasis supplied). No discretion is given the Commissioner and the IRS to read "all" and "any" as meaning only such transfers and only such valuable interests in property that it seems reasonable to tax. The Court identifies no statutory basis for such discretion, and even if the Court itself undertook to confer it I am not aware that we have ever before "assumed" that *tax laws* would be enforced—not according to their letter—but reasonably.

## III

The Court's answer to these concerns is that the exceptions and exemptions in the Tax Code will render most administrative problems "illusory." *Ante,* at 342. Although the $10,000 annual per donee exclusion will shield many taxpayers from having to pay gift taxes on intrafamily loans, the taxpayer cannot know whether he has exceeded the annual limit until he has assigned a value to every "transfer" that

falls within the Court's definition. In particular, a taxpayer who has made outright gifts during the year, approaching in dollar value the amount of the applicable annual exclusion, must be concerned with the value of intrafamily loans. Once he has exceeded the exclusion, he must file a gift tax return, listing and describing each gift. IRC § 6019(1) (1982 ed.); Treas. Reg. § 25.6019–4.

Nor does it suffice to say that most taxpayers will be protected from payment of gift taxes by the Tax Code's "lifetime exemption." Regardless of the availability of an offsetting credit, all taxpayers who exceed the annual per donee exclusion must go through the uncertain process of valuing intrafamily loans and filing a gift tax return. Moreover, a taxpayer's reduction of the unified credit lessens the amount of credit that will be available to offset estate taxes at the time of his death. In short, the net result of the Court's decision will be to create potential tax liability for many taxpayers who have never been subject to it before, and create legal, tax accounting, and return filing nightmares for many others.

The Court also fails to discuss the anomalies that today's decision will create in the tax laws. For instance, the Tax Code expressly provides that gifts are excluded from the gross income of the recipients for income tax purposes. IRC § 102. Under the Court's holding, a gift will be imputed with respect to each interest-free loan, with potential gift tax consequences for the lender. In many, perhaps most, cases, however, the borrowed funds will not generate specifically identifiable income. As a result, the lender may have gift tax liability, but the borrower is unable to exclude a commensurate amount from his income under § 102. Also, under the Court's reasoning, an interest-free loan to a charity entails a gift equal to the use-value of the funds loaned. Ordinarily, a gift to a charity is not subject to gift taxes and is deductible from a taxpayer's gross income. IRC §§ 170 and 2522. Under the provisions of the Tax Code and regulations, however, an interest-free loan does not generate an income tax

deduction and is subject to gift taxes. IRC § 2522(c); Treas. Reg. § 1.170A–7(d). Thus, an outright gift to a charity would provide an income tax deduction and would not be subject to gift tax, while a no-interest loan of the same amount would generate no income tax benefits and might generate gift tax liability.

None of the problems and anomalies I have outlined is insurmountable. They do involve, however, delicate issues of policy that should be addressed in the legislative forum.[10] Instead of recognizing the longstanding practice of attaching no gift tax consequences to interest-free loans of money and property, and leaving these difficult issues to the body responsible for legislating tax policy, the Court now allows the Commissioner to decide these questions without guidance. That course is ill-advised and inequitable.[11]

I dissent.

---

[10] I am not addressing the tax *policy* question whether there is a "loophole" that should be closed. It is my view that a long accepted interpretation of a tax statute should be changed only by Congress.

[11] In addition to my disagreement with the Court's interpretation of § 2501(a), I find the application of that interpretation to petitioners particularly unfair. The Commissioner first announced his nonacquiescence in the *Johnson* decision in early 1973. The loans at issue here spanned from 1971 to 1976. Thus, for two of the years for which the Commissioner assessed gift taxes, petitioners would have had no way of knowing that the outstanding interest-free loans might have gift tax consequences. In my view, retroactive application of the Court's holding in cases such as this is so fundamentally unfair that it would constitute an abuse of the Commissioner's discretion. See *Central Illinois Public Service Co.* v. *United States*, 435 U. S. 21, 34 (1978) (BRENNAN, J., concurring).