**John O. IRVINE and First Trust National Association, a national banking corporation, as co-personal representatives of the Estate of Sally O. Irvine, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 3–88–061.

United States District Court,
D. Minnesota,
Third Division.

Sept. 18, 1989.

---

1. Hill filed her lawsuit on September 18, 1991. The Act did not go into effect until November 21, 1991.

Phillip H. Martin, Faith L. Ohman, Mary J. Streitz, Dorsey & Whitney, Minneapolis, MN, Cole Oehler, Richard H. Kyle, Briggs & Morgan, St. Paul, MN, for plaintiffs.

Thomas D. Sykes, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, Jerome G. Arnold, U.S. Atty., Minneapolis, MN, for defendant.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the court upon cross motions for summary judgment. For the reasons set forth below, the court grants plaintiffs' motion and denies defendant's motion.

## FACTUAL BACKGROUND

The facts underlying this action are essentially undisputed. This is a tax refund action against the United States seeking refund of $9,628,293.92 in gift tax and interest assessed against Sally Ordway Irvine. Plaintiffs John O. Irvine and First Trust National Association have brought this action as co-representatives of Sally Irvine's estate and as successors-in-interest to her refund claims. The central issue in this motion is whether a written disclaimer executed by Sally Irvine on August 21, 1979, is legally effective. If the disclaimer is valid under the internal revenue code, then plaintiffs are entitled to the refund they seek.

Lucius Ordway, Sally Irvine's grandfather, created the trust at issue in this litigation on January 16, 1917, in Ramsey County, Minnesota. The trust instrument provided that the trust was to continue until the death of the survivor of Lucius Ordway's wife and five living children, John G. Ordway (Sally Irvine's father), Samuel G. Ordway, Lucius P. Ordway, Jr., Katherine Ordway, and Richard Ordway. From the income of the trust Lucius Ordway's wife received an annuity of $14,000, and the Ordway children (or after the child's death, the surviving spouse and issue) received any additional income in five equal shares. The trust instrument provided for termination of the trust and distribution of the trust corpus as follows:

> Upon the death of the survivor of my wife and children, and the termination of the aforesaid trust, said trustees shall pay over and transfer the trust fund in equal shares to each of my grandchildren per capita and not per sturpes [sic]. If any of my grandchildren shall then have died leaving issue, said children shall be entitled to equal portions of the share of said deceased grandchild.

Sally Irvine was born on December 23, 1910, and was six years old when the trust was created. She reached majority on December 23, 1931. Katherine Ordway, the survivor of Lucius Ordway's wife and children, died on June 27, 1979. On that date, twelve grandchildren of the settlor were alive (including Sally Irvine), one grandchild had died leaving issue, and another grandchild had died without issue. Accordingly, each of the twelve living grandchildren and the issue of the deceased grandchild were entitled to receive a $\frac{1}{13}$ share of the trust corpus.

Until the termination of the trust, Sally Irvine possessed a contingent remainder interest in the trust corpus. Her entitlement to a share of the trust principal was contingent on her survival beyond the date on which the survivor of Lucius Ordway's wife and children died. This contingency was satisfied upon the death of Katherine Ordway. On August 21, 1979, slightly over two months after Sally Irvine's interest became indefeasibly fixed in quantity and quality, Mrs. Irvine disclaimed $\frac{5}{16}$ of her $\frac{1}{13}$ interest in the trust corpus, and she filed a written disclaimer with the Ramsey County District Court. The Ramsey County court concluded, in an

order dated September 6, 1979, that the disclaimer was valid under Minnesota law.

On audit, the Internal Revenue Service (IRS) determined that the disclaimer was not valid under the internal revenue code and that the disclaimer effected a taxable gift. The IRS assessed a gift tax and interest for the calendar quarters ending September 1979 and September 1980. Sally Irvine paid the tax and interest under protest and then filed with the IRS for a refund.

The IRS assessed additional taxes as a result of its finding that the Irvine disclaimer was a taxable gift. The IRS reduced Irvine's available unified credit and assessed taxes on gifts to which the credit had been applied. Irvine paid the additional tax and interest and filed for a refund on the grounds that the disclaimer at issue was valid and effective. The IRS disallowed both of Irvine's refund claims on March 26, 1987, and plaintiffs responded by bringing this action.

## ANALYSIS

In deciding cross-motions for summary judgment the court must apply the standards set forth in Fed.R.Civ.P. 56(c). Judgment shall be rendered for a moving party provided that the pleadings and materials on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The judge's function at the summary judgment stage is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id.* at 249, 106 S.Ct. at 2510.

The IRS assessed taxes in this case under the authority of §§ 2501 and 2511 of the internal revenue code. In part, they provide:

A tax, computed as provided in section 2502, is hereby imposed for each calendar year on the transfer of property by gift during such calendar year by an individual, resident or nonresident.

26 U.S.C. § 2501(a)(1);

subject to the limitations contained in this chapter, the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible. . . .

26 U.S.C. § 2511(a). The Supreme Court has held that the broad language of these provisions "purports to reach any gratuitous transfer of any interest in property." *Dickman v. Commissioner*, 465 U.S. 330, 333, 104 S.Ct. 1086, 1088, 79 L.Ed.2d 343 (1984).

On the other hand, courts have long recognized an exception to federal estate and gift taxes for disclaimers. In *Brown v. Routzahn*, 63 F.2d 914 (6th Cir.1933), *cert. denied* 290 U.S. 641, 54 S.Ct. 60, 78 L.Ed. 557 (1933), a husband refused to accept a bequest under his wife's will. He filed an application for distribution with the probate court renouncing his interest in the property. Under Ohio law this was a valid disclaimer. The Collector of Internal Revenue assessed taxes on the property disclaimed, construing the disclaimer as a taxable transfer. The Sixth Circuit rejected the government's position, holding that since the husband had never acquired ownership of the property, the disclaimer was not a taxable transfer. Instead, it was deemed an exercise of his right to refuse a gift of property. *Id.* at 916–17; *cited with approval in Jewett v. Commissioner*, 455 U.S. 305, 314–15, 102 S.Ct. 1082, 1088–89, 71 L.Ed.2d 170 (1982).

In the case at hand the IRS does not contest the right of Sally Irvine to disclaim an interest in the trust corpus. However, the IRS contends that the disclaimer in this case is ineffective. The government relies on Treasury Regulation § 25.2511–1(c), which states:

a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer.

The refusal must be unequivocable [sic] and effective under local law.

26 C.F.R. § 25.2511–1(c).

In *Jewett* the Supreme Court invalidated a disclaimer on the grounds that it failed to comply with the "reasonable time" requirement of § 25.2511–1(c). The petitioner, George Jewett, had executed disclaimers of a contingent interest in a testamentary trust 33 years after the trust was created, but while his interest was still contingent. The trust had been created in 1939 at the death of the grantor, and the disclaimers were executed in 1972.

The facts of *Jewett* distinguish it from the case at hand, but the question addressed by the Supreme Court in *Jewett* is dispositive on the validity of the Irvine disclaimer. The *Jewett* Court identified the issue as follows: "The narrow question presented is whether the 'transfer' referred to in [§ 25.2511–1(c)] occurs when the interest is created, as the Government contends, or at a later time when the interest either vests or becomes possessory, as argued by petitioner." *Id.* at 306, 102 S.Ct. at 1082. The Court concluded that the date of the transfer, for purposes of the gift tax, was the time of the grantor's death. The Court further ruled that applying § 25.2511–1(c), which was promulgated in 1958, retroactively to the 1939 transfer was not unfair. The Court noted that *Jewett's* argument against retroactivity

> is based on the assumption that petitioner had a 'right' to renounce the interest without tax consequences that was taken away by the 1958 Regulation. Petitioner never had such a right. Indeed, petitioner does not argue that taxation of the disclaimers is inconsistent with the statutory provisions imposing a gift tax, *which were enacted long before petitioner's interest in the trust was created.*

*Id.* at 317, 102 S.Ct. at 1090. (emphasis added).

The fundamental distinction between *Jewett* and the present case is that the original transfer by Lucius Ordway occurred in 1917, well before the Gift Tax Act was passed in 1932. The IRS would have the court extend *Jewett* and hold that § 25.2511–1(c) applies not only to pre–1958 transfers, but to transfers occurring before passage of the Gift Tax Act as well. Plaintiffs contend that such a construction of the Gift Tax Act and the regulations is unreasonable and was not intended by Congress. In the alternative, plaintiffs argue that application of § 25.2511–1(c) to pre-Act transfers is unconstitutional.

As originally enacted, the 1932 Gift Tax Act clearly states that "[t]he tax shall not apply to a transfer made on or before the date of enactment of this Act." Gift Tax Act § 501(b) (1932), codified in 26 U.S.C. § 1000 (1932); *see also Commissioner v. Copley's Estate,* 194 F.2d 364, 367 (7th Cir.1952) ("[T]he gift tax act of 1932 is not applicable to an obligation created prior to its enactment.") Subsequent revisions of the gift tax provisions have maintained the prohibition against taxation of pre–1932 transfers. *See* 26 U.S.C. § 2502 (calculation of gift tax begins with periods after June 6, 1932). Commentators have noted that "Congress has been careful to avoid any taint of retroactivity in connection with the 1932 [gift] tax and the subsequent amendments to the tax." C. Lowndes, R. Kramer & J. McCord, *Federal Estate and Gift Taxes* 643 (1974).

In light of the intent of Congress to avoid retroactive application of gift tax provisions, it would be inconsistent to subject the Irvine disclaimer to the requirements of § 25.2511–1(c). The *Jewett* court had no difficulty with retroactive application of the Regulation to a 1939 transfer, but the court premised its decision on the fact that the interest in question was created long after the Gift Tax Act had become law. *Jewett* does not suggest that disclaimers of pre-Act transfers must comply with § 25.2511–1(c). Moreover, applying the Regulation in this case would frustrate the expectations of the transferor (Lucius Ordway) and the transferee (Sally Irvine). Ordway created the trust at a time when such a gratuitous transfer had no tax consequences. Neither he, nor Sally Irvine, would have contemplated the need for a disclaimer at the time. Only after Congress passed the Gift Tax Act in 1932 did Irvine have a reason to disclaim an interest in the trust proceeds. Under the IRS's interpretation of the § 25.2511–1(c), it was too late for

Irvine to execute an effective disclaimer at this time because the disclaimer would not have been made within a reasonable time after the 1917 transfer. In the absence of statutory authority, legislative history or dispositive precedent the court will not employ such a harsh construction of § 25.2511–1(c).

In *Ordway v. United States,* 3 Fed.Est. & Gift Tax Rep. (CCH) Para. 13,802, 1989 WL 108798 (S.D. Fla.1989), the court reached the same conclusion on virtually identical facts. The plaintiff, John G. Ordway, Jr., is the grandson of Lucius P. Ordway and a cousin to Sally Irvine. He also partially disclaimed an interest in the corpus of the Ordway trust in August of 1979. As with Irvine, the IRS assessed taxes on the disclaimer, finding that the disclaimer failed to comply with § 25.-2511–1(c). The court granted summary judgment in favor of the plaintiff in Ordway's refund suit. Significantly, the court found that since the interest disclaimed was created prior to the enactment of the 1932 Act, § 25.-2511–1(c) was inapplicable to the transfer.

This case is indistinguishable from *Ordway,* and the court finds the reasoning of *Ordway* compelling. Sally Irvine never accepted the interest that she disclaimed, and her disclaimer is valid under Minnesota law. The IRS contends that Irvine enjoyed "estate planning benefits" because she was aware of her status as a trust beneficiary from 1917 until 1979. This argument is without merit because Irvine's interest in the trust corpus remained contingent until the death of Katherine Ordway, which occurred in 1979.

Since Irvine's disclaimer was effective under Minnesota law, plaintiffs are entitled to the refund they seek in Count I of the complaint. Count II of the complaint is entirely contingent on the effectiveness of the disclaimer as well. The IRS reduced Irvine's unified gift tax credit solely because it determined that the disclaimer was a taxable transfer. Consequently, the IRS assessed additional taxes. Having found for the plaintiffs on Count I, it follows that summary judgment is appropriate on Count II as well.

Accordingly, **IT IS ORDERED** that:

1. Plaintiffs' motion for summary judgment shall be, and hereby is, **GRANTED.**

2. Defendant's motion for summary judgment shall be, and hereby is, **DENIED.**

3. Within twenty days from the date of this order, plaintiffs shall submit a statement of the amount of refund that they seek, including accrued interest, claims for fees and costs. The defendant shall have ten days within which to respond.