**FIRST FEDERAL SAVINGS BANK OF WASHINGTON, a Corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. C–89–519–AAM.**

United States District Court, E.D. Washington.

May 13, 1991.

James K. Hayner, Walla Walla, Wash., for plaintiff.

Thomas J. Sawyer, U.S. Dept. of Justice, Seattle, Wash., and Tax Div. U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT INTER ALIA

McDONALD, District Judge.

Before the court for resolution are the plaintiff's Motion for Summary Judgment (Ct.Rec. 8) and the defendant's Cross–Motion for Summary Judgment (Ct.Rec. 25). Also before the court are Cross–Motions to File Overlength Memoranda (Ct.Rec. 14, 22). All were heard with oral argument on May 1, 1991 in Yakima, Washington. The plaintiff was represented by James K. Hayner; Thomas J. Sawyer of the United States Department of Justice appeared on behalf of the defendant. Primarily at issue is the propriety of Treas.Reg. § 1.593–6A(b)(5)(vi) and (vii). For the reasons set forth below, the court finds this regulation to be a proper interpretation of those controlling statutory provisions, and thus the plaintiff's motion for summary judgment must be denied, and the defendant's granted.

### I.

The plaintiff, First Federal Savings Bank of Washington, is a mutual savings and loan association located in Walla Walla, Washington. The defendant is the United States of America. This action was commenced on July 27, 1989 for the recovery of federal income taxes paid but allegedly not owing. Subject-matter jurisdiction is properly vested in this court pursuant to 26 U.S.C. § 7422 and 28 U.S.C. §§ 1340, 1346.

As a mutual savings and loan association, the plaintiff was generally permitted to deduct as a provision for bad debts (see Internal Revenue Code (I.R.C., 26 U.S.C.) § 166[1]) an amount computed pursuant to § 593 ("Reserves for losses on loans"). According to § 593(b), and with respect to "qualifying real property loans," there are three alternate methods by which such bad debt deductions may be calculated: the "percentage of taxable income method," whereby the deduction is equal to a specified percentage of the plaintiff's taxable

income (computed without regard to this deduction or to certain other enumerated items); the "percentage method", whereby the deduction is equal to a specified percentage of certain outstanding loans; and the "experience method," whereby the deduction is based on an average of those bad debts actually incurred during the taxable and five preceding taxable years. This section further permitted the plaintiff to utilize whichever of these three methods yielded the largest result—which, for the tax years 1971–1980, was achieved through use of the "percentage of taxable income method." It was thus upon this basis that the plaintiff computed its deduction for bad debts and (accordingly) its net taxable income.

The 1980s were not a good time for mutual savings and loans generally, and the plaintiff proved to be no exception. During the 1981–84 tax years, the plaintiff suffered net operating losses ("NOL's"—see § 172) totaling more than $11 million. Section 172 generally provides that NOL's may be carried back or forward to other taxable years and used as a deduction in those prior or later years. Like the deduction for bad debts computed via the § 593 "percentage of taxable income method", the amount of NOL that may be deducted (and hence utilized) in any taxable year is also dependent upon the amount of taxable income (similarly computed without regard to the NOL itself or to certain other enumerated items) available in that year.

Because the § 593 "percentage of taxable income method" bad debt reserve calculation and the NOL deduction are both computed based upon that taxable income available in any given carryback or carryforward taxable year, the question arises whether the bad debt deduction is to be calculated *prior* to any deduction for an NOL (which results in a larger bad debt deduction in the carryback/carryforward taxable year and, correspondingly, a smaller NOL deduction in that year (and thus a greater availability of NOL for carryback/carryforward to other taxable years)),

---

**1.** Adopting the convention utilized by the parties in their submissions, all citations shall be presumed to be to that law which was applicable at the time or times in question.

or *subsequent* to a deduction for any NOL (which results in a more accelerated utilization of available NOL's and essentially compels the utilization of one of the two alternate means of calculating the § 593 bad debt reserve). Simply stated, this is the precise question at issue here. At stake is something in excess of $1.4 million, excluding interest.

## II.

### A. *Cross-motions to File Overlength Memoranda*

Due to the complexities surrounding the seemingly simple issue raised, and, accordingly, the quantity of information necessary to permit its understanding, the court finds good cause for the filing of the overlength memoranda. Thus, IT IS HEREBY ORDERED that the parties' cross-motions to file such memoranda be GRANTED. LR 7(f).

### B. *Cross-motions for Summary Judgment*

Fed.R.Civ.P. 56(c) states that summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Thus, once the moving party has carried its burden under Rule 56(c), the adverse party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), or demonstrate the "existence of *some* alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Rather, the adverse party "must come forward with specific facts showing that there is a *genuine issue for trial*," *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. Accordingly, where the record, taken as a whole and viewed in the light most favorable to the adverse party, could not lead a rational trier of fact to find for the adverse party, there is no genuine issue for trial, making the matter appropriate for summary adjudication. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

In light of the parties' cross-motions, and there appearing to exist no material questions of fact,[2] the court finds this matter to be in a posture properly permitting summary adjudication.

As suggested by the parties, the disposition of this action essentially turns on whether this court adopts the view of the majority or of the dissent as expressed in *Pacific First Federal Savings Bank v. Commissioner*, 94 T.C. 101 (1990), *appeal pending*, Docket No. 91–70116 (9th Cir.).[3] Upon consideration of those opinions and of the excellent and detailed submissions by the parties, the court finds, with all due respect to that judicial body specifically charged with the resolution of matters of this nature, that it must adopt that view propounded by the dissent. Because the court further finds that Judge Gerber's opinion contains a complete discussion of the reasoning behind the adoption of this view, a protracted restatement of those arguments will not be undertaken here; instead, that opinion will simply be incorporated herein by reference. But before

---

**2.** *E.g.*, the defendant has filed no statement of material facts in opposition to that filed by the plaintiff; *see* LR 56(c).

**3.** *See also Peoples Federal Savings & Loan Association of Sidney v. Commissioner*, 59 T.C.M. (CCH) 85 (1990), *appeal pending*, Docket No. 90–1939 (6th Cir.).

passing on this issue, the court would like to offer some brief comment with regard to those portions of the dissent which this court finds to be particularly persuasive.

First, the court must express its distrust of the unbridled use of what is generically termed legislative history as a means of determining the purpose and applicability of an arguably ambiguous statutory provision. Particularly suspect are those invocations where, as here, direct support for the propositions advanced on either side is nowhere to be found. While legislative history certainly has its proper place in statutory interpretation, any suppositions as to what Congress actually (though not expressly) considered in enacting or reenacting a particular statute, as well as any conclusions drawn from congressional inaction, must be regarded (and then disregarded) as specious. *See Blanchard v. Bergeron*, 489 U.S. 87, 97, 109 S.Ct. 939, 946, 103 L.Ed.2d 67 (1989) (Scalia, J., concurring in part and concurring the judgment).

 Second, the court must disagree with the plaintiff as to the effect to be given the Treasury regulation at issue. Where a federal income tax regulation may be found to implement the congressional mandate in some reasonable manner, it must be upheld. *National Muffler Dealers Association, Inc. v. United States*, 440 U.S. 472, 476, 99 S.Ct. 1304, 1306, 59 L.Ed.2d 519 (1979). This is so because "Congress has delegated to the Secretary of the Treasury and his delegate, the Commissioner of Internal Revenue, not to the courts, the task of prescribing 'all needful rules and regulations for the enforcement' of the Internal Revenue Code." *Id.* at 477, 99 S.Ct. at 1307 (quoting 26 U.S.C. § 7805(a)). That deference is to be afforded a particular regulation is no less true where the regulation represents a departure from prior practice or is made retroactive in effect. *Dickman v. Commissioner*, 465 U.S. 330, 343, 104 S.Ct. 1086, 1094, 79 L.Ed.2d 343, *reh'g denied*, 466 U.S. 945, 104 S.Ct. 1932, 80 L.Ed.2d 477 (1984). Because this court is unable to conclude that Treas.Reg. § 1.593–6A(b)(5)(vi) and (vii) constitutes an unreasonable implementa-

tion of those statutory provisions it purports to interpret, it is, as stated *supra*, obliged to uphold it.

Finally, this court finds that the position espoused by the plaintiff simply does not comport with this court's understanding of the overall scheme of the federal income tax system. As noted by the defendant, the invalidation of Treas.Reg. § 1.593–6A(b)(5)(vi) and (vii) would 1) result in a tax liability for a mutual savings and loan association (such as the plaintiff) with income in one year and loss in another which is considerably less than that which would be incurred by an identical entity with the same amount of total income spread evenly over both years, and 2) the absence of express statutory authority notwithstanding, result in more favorable treatment of such entities than is afforded non-qualifying entities. Such a construction is contrary to this court's notion that in interpreting any statute—those dealing with taxation or otherwise—such should be construed in a manner whereby all persons are treated uniformly and consistently. The court would add also that such a construction 1) seems to give unwarranted preeminence to the "percentage of taxable income method" (which, though not wholly arbitrary, must be viewed as a somewhat artificial means of generating a bad debt deduction) in the NOL (and yet not the near-NOL) context in that the "percentage method" and "experience method" are reduced to nullities, and 2) is by implication inconsistent with those statutory provisions (*e.g.*, §§ 170, 246 and 613A) which, while also computed based upon taxable income, expressly exempt the NOL (§ 172) deduction from the computation.

For all of these reasons, IT IS FURTHER ORDERED that the plaintiff's motion for summary judgment be DENIED, and that the defendant's cross-motion be GRANTED.

As the plaintiff has failed to prevail in this, a refund action, the court presumes that no adjustments to the plaintiff's federal tax liability need be included in the judg-

ment.[4] The parties shall inform the court if this presumption is incorrect.

IT IS SO ORDERED.

---

**4.** The court is mindful of the fact that such adjustments might be necessary depending upon the outcome in *Frontier Federal Savings v. United States,* C–89–251–AAM, adjustments which the court feels would be more properly handled within the confines of that action.