within the definition of "Secretary." Such a strained definition would be repugnant to section 9(a) of the Armed Forces Procurement Act of 1947, 62 Stat. 21, 24,[1] which provides:

"The term 'agency head' shall mean the Secretary, Under Secretary (if any), or any Assistant Secretary of the Army, of the Navy, or of the Air Force; the Commandant, United States Coast Guard, Treasury Department; and the Executive Secretary, National Advisory Committee for Aeronautics, respectively."

Plaintiff's next contention is that the Wunderlich statute, 41 U.S.C.A. § 321, prevents defendant's plea of finality underlying its motion for summary judgment. Since plaintiff has failed to exhaust its administrative remedies, it cannot be heard to complain of this. Had it exhausted its administrative remedies, this court could then entertain a suit based upon allegations that findings of an agency were unsupported by substantial evidence. However, here we cannot reach this question because plaintiff must have appealed to the Secretary before coming to this court. See cases cited supra.

Plaintiff's next and last contention is that the Claims and Appeals Board decision was based upon a question of law, which was without the jurisdiction of the Appeals Board. We cannot agree with this contention for this reason: Plaintiff's appeal *per se* was based upon a changed condition within the purview of article 4 of the contract; i. e., that the subsurface condition encountered was different from that shown in the drawings and specifications. This is purely a factual question and one which, in the case of dispute, was to be determined under article 6 of the contract. Furthermore, plaintiff's petition is grounded upon the proposition that it encountered changed conditions within clause 4 of the contract. Again this is purely a question of fact to be determined pursuant to the contract provisions.

Plaintiff having failed to exhaust its administrative remedies, defendant's motion for summary judgment is granted and the petition is dismissed.

It is so ordered.

REED, Justice (Retired), sitting by designation, JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.

**NORTH AMERICAN VAN LINES, INC.**
v.
**UNITED STATES.**
No. 16–58.

United States Court of Claims.
Jan. 14, 1959.

1. Now 10 .S.C.A. § 2302.

Clifford J. Hynning, Washington, D. C., for plaintiff. Thomas R. Kingsley, Washington, D. C., on the brief.

Jerome S. Hertz, Washington, D. C., Acting Asst. Atty. Gen., Andrew F. Oeh-mann, for defendant James P. Garland and Lyle M. Turner, Washington, D. C., on the brief.

MADDEN, Judge.

This is a suit to recover a part of the highway motor vehicle use tax which the plaintiff was required to pay on its highway tractors and trailers for the taxable period July-November 1956. This excise tax upon the use of motor vehicles on the highways was imposed by sections 4481 and 4482 of the Internal Revenue Code of 1954.

The Federal Aid Highway Act of 1956, 70 Stat. 374, 23 U.S.C. 1952 ed., Supp. IV, § 151ff [1] provided for the early completion of the "National System of Interstate Highways" which had been authorized by earlier legislation. To provide funds for the work, section 206(a) of the Highway Revenue Act of 1956, 70 Stat. 374, 389, added, among other provisions, sections 4481 and 4482 to the Internal Revenue Code of 1954, 26 U.S.C. 1952 ed. Supp. IV, 4481, 4482. These sections read in part as follows:

"§ 4481

"(a) *Imposition of tax.*—A tax is hereby imposed on the use of any highway motor vehicle which (together with the semitrailers and trailers customarily used in connection with highway motor vehicles of the same type as such highway motor vehicle) has a taxable gross weight of more than 26,000 pounds, at the rate of $1.50 a year for each 1,000 pounds of taxable gross weight or fraction thereof. * * *"

"§ 4482 * * *

"(b) *Taxable gross weight.*—For purposes of this subchapter, the term 'taxable gross weight', when used with respect to any highway motor vehicle, means the sum of—

"(1) the actual unloaded weight of—

"(A) such highway motor vehicle fully equipped for service, and

---

[1]. Now 23 U.S.C.A. § 101 et seq.

"(B) the semitrailers and trailers (fully equipped for service) customarily used in connection with highway motor vehicles of the same type as such highway motor vehicle, and

"(2) the weight of the maximum load customarily carried on highway motor vehicles of the same type as such highway motor vehicle and on the semitrailers and trailers referred to in paragraph (1) (B).

Taxable gross weight shall be determined under regulations prescribed by the Secretary or his delegate (which regulations may include formulas or other methods for determining the taxable gross weight of vehicles by classes, specifications, or otherwise). * * * "

The Treasury Department issued regulations under the authority given it by section 4482. Section 41.4482(b)–1 of Treasury Regulations on Highway Motor Vehicle Use defined "Taxable Gross Weight" for the purposes of this tax. It said that taxable gross weight is the sum of (1) the actual unloaded weight of the truck or tractor; (2) the actual unloaded weight of any one or more trailers or semitrailers customarily used in combination with the type of tractor involved; and (3) the weight of the maximum load customarily carried on such trailers or semitrailers.

The Treasury Regulations then set out a fixed schedule of "taxable gross weights" which would, for tax purposes, be attributed to certain types of equipment. The schedule for "combination" equipment, i. e., tractors hauling trailers, listed seven classes, designated by the letters D to J. The ones with which we are here concerned are classes D, E and F. Class D covered 2-axled truck-tractors with actual unloaded weight between 5,500 pounds and 7,000 pounds. The regulation attributed to such a tractor and its trailer and the load in the trailer a taxable gross weight of 30,000 pounds. Attributed taxable weights of 40,000 pounds and 50,000 were assigned, respectively, to the heavier 2-axled truck-tractors covered by classes E and F.

The plaintiff's objection to the amount of taxes which it was required to pay on its equipment is that the loads which it actually imposed upon the highways were not as heavy as the attributed weights upon which it was taxed.

The plaintiff's business was the hauling of household goods as a common carrier under a license for that purpose from the Interstate Commerce Commission. Household goods are much lighter than the merchandise normally carried in trailers used for general hauling purposes. The household goods carried by the plaintiff weighed less than six pounds per cubic foot of the space in the trailers in which they were hauled. Of the total tonnage of goods carried in trucks and trailers in 1954, 1,650,825,000 tons, only about 29,000,000 tons were of goods weighing less than 10 pounds per cubic foot.

The plaintiff kept actual records of the weight of the equipment and loads of 19 of its vehicles during the tax period here in question. These records show that the Class D vehicles, to which the taxing authorities attributed a weight of 30,000 pounds, in fact weighed from 25,800 to 29,000 pounds; that the Class E vehicles, to which a weight of 40,000 pounds was attributed, in fact weighed from 28,400 to 31,600 pounds; that the Class F vehicles to which a weight of 50,000 pounds was attributed, in fact weighed from 27,700 to 37,100 pounds. The parties have stipulated for the purposes of this litigation that these figures are accurate, and are typical of what would be shown by actual records of the experience of all of the approximately 332 trucks in the plaintiff's fleet.

The plaintiff urges that the discrepancy between the actual weight of its equipment and loads and the artificially set weights, on the basis of which the plaintiff's taxes were imposed was so great that it rendered the classification illegal. The parties have stipulated that:

"In developing the taxable gross weight figures used in the Regulations, no attempt was made to distinguish between the various types of

goods capable of being hauled or types of transportation services being provided by each particular type and weight of power unit or between the densities of load per cubic foot customarily hauled by the many different groups of carriers within the trucking industry."

Congress in section 4481 imposed a tax at the rate of $1.50 a year for each 1000 pounds of gross weight or fraction thereof. That provision would not seem to authorize the taxing authorities to tax loaded combinations weighing, as did the plaintiff's Class F units, from 27,700 to 37,100 pounds as if they weighed 50,000 pounds. But Congress in section 4482 relieved the taxing authorities of the probably impossible task of actually weighing the equipment and loads by writing a definition of "taxable gross weight" which permitted generalization by the taxing authorities. They could tax as if there were a trailer of the kind "customarily used in connection with" the tractor, and as if it were loaded with "the maximum load customarily carried" on such a trailer by such a tractor. Congress further provided, in the same section 4482 that:

"Taxable gross weight shall be determined under regulations prescribed by the Secretary or his delegate (which regulations may include formulas or other methods for determining the taxable gross weight of vehicles by classes, specifications, or otherwise)."

The parties have stipulated that the figures used by the Treasury Department fairly and accurately represent average maximum loaded weights for the trucking industry as a whole, for tractors of classes D, E, and F. Our question then is whether the generalizations embodied in this classification, which have, perhaps, the effect of taxing accurately, or perhaps undertaxing, a carrier which customarily carries cases of canned fruits or vegetables, for example, is valid as to the plaintiff, which, being caught within the generalization, is made to pay taxes upon weights greatly in excess of its actual loads.

If a statute itself specifies classes, the things at the bottom of the class may be, of course, very different from those at the top of the class, if the class is a large one. The statute is no worse for that, unless there is no rational basis for giving the same legal treatment to things so unlike. When the legislature delegates to the executive the authority to make generalizations or classifications, that authority is not as broad as the power of the legislature itself. Legislative classification need only withstand the test of constitutionality. But classification by the executive, under delegated authority, should be consistent with the intent of the legislature. There is no reason to suppose that the legislature intended that the executive, as its delegate, should press its classification to the verge of irrationality, which the legislature has the constitutional power to do, but in fact rarely does.

The parties have stipulated that maintenance and construction costs of highways are affected not only by the actual weight of the vehicles, but by the width, height and length of the vehicles, the distribution of gross weight per axle, and the frequency of occurrence of axle loads in the traffic stream. Since Congress measured the tax by weight, we think the Treasury Department had no authority, if it did so, to attribute fictitious weight to vehicles because they were wide or high or long or had only one axle instead of two or more or were numerous on the roads.

We think that the schedule of classes set up in the Treasury Regulations was authorized, and perhaps required, by the statute itself. The discrepancy between actual and artificially attributed weights, of which the plaintiff complains, relates not to the weight of the tractors or the unloaded trailers, but to the weight of the loads carried in the trailers. But section 4482(b) (2) says that the load element in the "taxable gross weight" shall be:

"The weight of the maximum load customarily carried on * * * the semitrailers and trailers referred to in paragraph (1) (B)."

And paragraph (1) (B) describes the trailers as:

"The semitrailers and trailers * * * customarily used in connection with * * * [tractors] of the same type as [the tractor in the combination that is being taxed] * * *."

It was Congress itself which made the artificial classification. It said that, to determine the tax, you need look only at the type of the tractor. The kind of trailer you, for tax purposes, hitch to it has nothing to do with what this tractor is actually going to haul, but only with what tractors of this type customarily haul. And likewise as to the load which is artificially loaded in the artificially hitched trailer. It is not the actual load which is going to be hauled. It is the maximum load customarily carried in a trailer of the kind which has been artificially hitched to the tractor.

Our question, then, is whether Congress has the power, under the Constitution, to make this kind of a classification for the purpose of imposing an excise tax. We think the case presents no serious Constitutional question. The plaintiff urges that it presents the problem of an attempted legislatively created irrebuttable presumption of a fact which is contrary to the actual fact. It cites Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772, and other cases holding that legislatures do not have that creative power.

In the instant situation Congress recognized, as does the plaintiff, that it would be impracticable to weigh actual loads for the purpose of assessing the tax. It was a tax payable once a year. Practically, it had to be based on capacities of equipment. Congress might have provided that if a taxpayer could prove that it was in the kind of business in which it never used the equipment up to its weight capacity, or that under its Interstate Commerce Commission license it could not lawfully so use its equipment, the tax should be reduced accordingly. Whether such differential treatment of various classes of highway users would have created administrative difficulty and expense disproportionate to the benefits resulting from it was a problem for Congress, not for the courts.

The plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE and WHITAKER, Judges, concur.

Herbert VON BREDOW, Maria Von Bredow, and Philippa Von Thun-Hohenstein, Nee Von Bredow

v.

UNITED STATES.

No. 470-57.

United States Court of Claims.

Jan. 14, 1959.

