**MINNESOTA POWER AND LIGHT COMPANY**

v.

**The UNITED STATES.**

**No. 617–81T.**

United States Claims Court.

Nov. 21, 1984.

James W. Littlefield, Minneapolis, Minn., for plaintiff.

Betty N. Ferber, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

## OPINION

YOCK, Judge.

The plaintiff in this case seeks a refund of federal excise taxes and interest in the

amount of $24,599.15, paid in highway use tax assessments for the tax years ended June 30, 1973, June 30, 1974, June 30, 1975, and June 30, 1976, plus statutory interest. The assessments were based upon a determination by the Internal Revenue Service (IRS) that the plaintiff's utility trucks, equipped with pintle hooks capable of towing heavy-duty trailers, should be taxed as truck-trailer combinations rather than as single unit vehicles. The plaintiff paid the assessed taxes and, after the IRS disallowed its claim for refund, filed suit in the United States Court of Claims. On October 1, 1982, the case was transferred to this Court. The defendant has now filed a motion for summary judgment. For the reasons discussed in this opinion, the defendant's motion for summary judgment is denied.

### Facts

The plaintiff, Minnesota Power and Light Company, is a public utility company engaged in generating, transmitting and distributing electricity and natural gas in northeastern Minnesota. During the tax years in issue, the plaintiff owned and operated approximately 295 utility trucks which were used in connection with constructing, maintaining and repairing the plaintiff's utility system. Almost all of these trucks were equipped with coupling devices, known as pintle hooks,[1] capable of towing either trailers with two or more axles or trailers with one axle but having gross vehicle weights of 6,000 pounds or more (both of these types of trailers are hereinafter referred to as heavy-duty trailers). While the plaintiff owned approximately 64 trailers during the years in issue, only about 40 trailers can be classified as heavy-duty trailers.

On its federal highway use tax returns, filed for the tax years ended June 30, 1973, through June 30, 1976, the plaintiff classified its utility trucks as single unit vehicles and paid the use taxes applicable to that class of highway motor vehicles. During a subsequent audit, the IRS determined, without considering whether trucks of the type in question are customarily used in combination with such trailers, that the presence of pintle hooks on the plaintiff's trucks caused those vehicles to be "equipped for use in combinations" with trailers. Accordingly, the IRS reclassified those trucks as "truck-trailer combinations," a classification subject to a higher tax rate than the rate applicable to "single unit" vehicles.

On the basis of its reclassification of the plaintiff's utility trucks as truck-trailer combinations, the IRS assessed additional highway use taxes against the plaintiff. The plaintiff paid the assessments and timely filed claims for refunds in the amount of $24,599.15.[2] The primary basis for such refund claims was that the plaintiff's utility vehicles were not "customarily" used as truck-trailer combinations. In effect, the plaintiff's position was and is that the IRS can utilize an "equipped for use" test, under its authority contained in section 4482(b) and set out in Treas.Reg. § 41.4482(b)–1(d), for purposes of administrative convenience in collecting the subject excise taxes. However, the plaintiff argues that the IRS cannot disregard the statutorily mandated "customary use" test, when faced with a taxpayer who asserts that his vehicles are not customarily used in a manner consistent with the type of equipment (*e.g.*, a pintle hook) with which his vehicles are equipped. As a result, the plaintiff's argument before this Court seeks the judicial recognition of a two-prong test. First, all vehicles which are "equipped for use in combinations" may be administratively classified as single units, truck-trailer combinations, or tractor-trailer

---

**1.** A pintle hook is a mechanism that can be attached to the back of a truck or other motor vehicle which will enable that vehicle to pull a trailer or other piece of equipment if the other piece of equipment is equipped with an eye that will go into the hook.

**2.** The particular refund claims were as follows:

| Period | Tax | Interest |
|---|---|---|
| 7–1–72 to 6–30–73 | $5,046.00 | $1,681.52 |
| 7–1–73 to 6–30–74 | 5,190.00 | 1,418.10 |
| 7–1–74 to 6–30–75 | 4,761.00 | 1,015.23 |
| 7–1–75 to 6–30–76 | 4,566.00 | 921.30 |

combinations, depending upon the appropriate formula devised by the IRS pursuant to section 4482(b). However, the second prong of the test requires, upon such classification by the IRS and subsequent challenge by the taxpayer, that the taxpayer be given an opportunity to prove that the subject vehicles are not customarily used in the manner in which they have been classified by the IRS, pursuant to section 4481(a).

On October 22, 1979, and on October 29, 1979, the Internal Revenue Service Center, in Ogden, Utah, mailed to the plaintiff formal notices of disallowance of the plaintiff's claims for refund. In this action, the IRS has asserted that its denial of the plaintiff's refund claims was based upon its belief that the "equipped for use" test, formulated by the IRS under section 4482(b), was the only test which need be applied in classifying a taxpayer's vehicles for purposes of the federal highway use tax. In effect, the IRS alleges that the broad delegation of authority to devise a formula, contained in section 4482(b), allows it to define "customary use" in whatever manner it sees fit. Thus, the IRS argues that it has defined the "customary use" statutory language as being essentially synonymous with the "equipped for use" language. In adopting this position, however, the IRS is forced to distinguish almost twenty years of virtually unchanged treasury regulations, revenue rulings, and General Counsel Memoranda, all of which contained references to a determination of "customary use." As will be seen, this Court refuses to equate the "customary use" test with the IRS's "equipped for use" test and, as a result, adopts the above two-prong test advocated by the plaintiff.

Thereafter, on October 21, 1981, the plaintiff filed this action for refund. The defendant has now filed a motion for summary judgment. The plaintiff has filed a brief in opposition to the defendant's motion for summary judgment, and the defendant has replied. Oral argument on defendant's motion, along with oral argument on two companion cases—*Kansas City Power & Light Co. v. United States,* No. 230–82T, and *L.E. Myers Co. v. United States,* No. 362–79T—was held in Washington, D.C., on October 2, 1984.[3]

## Discussion

In 1956, Congress enacted the Highway Revenue Act of 1956, seeking to raise, for the first time, additional revenue from the use of certain highway motor vehicles in order to finance federal aid for the construction of this nation's interstate highways. Pub.L. No. 84–627, 84th Cong., 2d Sess (1956). Despite subsequent statutory modifications, the highway use tax has always been computed based upon the weight of the motor vehicle in question, plus the unloaded weight of any trailer customarily used with vehicles of the type in question and the weight of the load customarily carried on that type of vehicle and on any trailer customarily used with the vehicle.

Section 4481 imposes a tax "on the use of any highway motor vehicle which (together with the semitrailers and trailers *customarily* used in connection with highway motor vehicles of the same type as such highway motor vehicle) has a taxable gross weight of more than 26,000 pounds * * *." 26 U.S.C. § 4481(a) (1982) (emphasis supplied).[4]

The term "taxable gross weight" is defined as the sum of:

(1) the actual unloaded weight of—

(A) such highway motor vehicle fully equipped for service, and

(B) the semitrailers and trailers (fully equipped) for service *customarily* used in connection with highway motor vehi-

---

3. There are currently suspended in this Court five other cases (in addition to the two companion cases cited above) awaiting decisions in this matter. In addition, there appears to be considerable interest from within the utility industry as a whole in the outcome of this decision.

4. In all pertinent respects, the Internal Revenue Code and treasury regulations sections cited in this opinion remained essentially unchanged between 1956 and 1983. Therefore, to facilitate reference, the 1983 version of the regulations will be cited throughout this opinion.

cles of the same type as such highway motor vehicle, and

(2) the weight of the maximum load customarily carried on highway motor vehicles of the same type as such highway motor vehicle and on the semitrailers and trailers referred to in paragraph (1)(B).

26 U.S.C. § 4482(b) (emphasis supplied).

In addition, section 4482(b) provides that "[t]axable gross weight shall be determined under regulations prescribed by the Secretary [of Treasury] (which regulations may include *formulas or other methods* for determining the taxable gross weight of vehicles by classes, specifications, or otherwise)." (Emphasis added.) Pursuant to this section, the Secretary of the Treasury (Secretary) promulgated regulations, in late 1956, defining the terms "highway motor vehicle" and "taxable gross weight" and setting forth a schedule of taxable gross weights for trucks having certain coupling characteristics. In this regard, Treas.Reg. § 41.4482(a)–1(b) provides that:

Although trailers and semitrailers used in combination with highway trucks or truck-tractors are not vehicles the use of which is subject to the tax imposed by section 4481(a), trailers and semitrailers *customarily* used in combination with highway trucks or truck-tractors are taken into account in determining the taxable gross weight of the highway motor vehicle under § 41.4482(b)–1, which is the base of the tax. [Emphasis supplied.]

26 C.F.R. § 41.4482(a)–1(b). Further, Treas.Reg. § 41.4482(b)–1(a) sets out a method for determining a vehicle's "taxable gross" weight, which provides that:

Taxable gross weight of a highway motor vehicle is determined with reference to the sum of (1) the actual unloaded weight of such highway motor vehicle (fully equipped for service); (2) the actual unloaded weight of any one or more trailers or semitrailers (fully equipped for service) *customarily* used in combination with highway motor vehicles of the same type as such highway motor vehicle * * *. [Emphasis supplied.]

26 C.F.R. § 41.4482(b)–1(a). In addition, this regulation sets out a schedule of taxable gross weights for three specific categories of highway motor vehicles: (1) single units; (2) tractor-trailer combinations; and (3) truck-trailer combinations. 26 C.F.R. § 41.4482(b)–1(d).

This schedule, as interpreted by the Commissioner of the Internal Revenue Service (Commissioner), categorizes as single units those trucks designed for the transportation of property, which are not equipped to tow a trailer or semitrailer of the type that forms a "combination" when coupled with a truck. If a vehicle is classified as a single unit, no use tax is imposed if its actual unloaded weight is less than 13,000 pounds. Further, where the actual unloaded weight is 13,000 pounds or more and the vehicle is classified as a single unit, the use tax is less than the tax imposed under either the tractor-trailer combination category or the truck-trailer combination category, presumably because there is less wear and tear on the highways. 26 C.F.R. § 41.4482(b)–1(d).

The truck-trailer combination category includes any truck designed primarily for the transportation of property, and which is equipped for towing trailers or semitrailers of the type that form a combination when coupled with a truck, if trucks of the same type, when so equipped, are *customarily used* to tow such trailers or semitrailers. Under the schedule covering truck-trailer combinations, no use tax is imposed if the actual unloaded weight of the vehicle is less than 9,000 pounds. However, annual use taxes are imposed on a "2 axled truck with actual unloaded weight of 9,000 pounds or more and less than 12,000 pounds and equipped for use in combinations," and on a "2 axled truck with actual unloaded weight of 12,000 pounds or more and equipped for use in combinations." 26 C.F.R. § 41.4482(b)–1(d). *See* Rev.Rul. 75–297, 1975–2 C.B. 443; and Rev.Rul. 76–558, 1976–2 C.B. 360.

The portion of this "taxable gross weights" schedule, set out in the treasury

regulations and specifically relied on by the defendant in this action, reads as follows:

3. *Truck-Trailer Combinations:*

(p) 2 axled truck with actual unloaded weight of 9,000 pounds or more and less than 12,000 pounds and *equipped for use in combinations.* [Emphasis added.]

26 C.F.R. § 41.4482(b)–1(d). It is this language, contained in a subordinate schedule included within the treasury regulations, upon which the Government wholly relies in supporting its claim that the plaintiff's trucks should be taxed as truck-trailer combinations, rather than as single units. Contrary to the assertions of the Government, however, neither the language of the statute nor its legislative history supports this position.

The defendant argues, in its motion for summary judgment, that sections 4481 and 4482 *do not* require a factual inquiry into whether trailers are customarily used in connection with trucks of the types owned by the plaintiff. Rather, the defendant argues that the required inquiry into whether particular trucks are of the type with which trailers are "customarily used" has been previously undertaken by the Secretary in promulgating the treasury regulations, set out above, pertaining to I.R.C. §§ 4481 and 4482. In support of its interpretation of the statute, the defendant observes that Congress delegated to the Secretary the authority to use "formulas or other methods for determining the taxable gross weight of vehicles by classes, specifications, or otherwise." 26 U.S.C. § 4482(b). Pursuant to this grant of authority, the defendant asserts, the Secretary created three classes of motor vehicles subject to the highway use tax: (1) single unit vehicles; (2) tractor-trailer combinations; and (3) truck-trailer combinations. Falling within the latter two categories are trucks with which heavy-duty trailers are customarily used. As a result, the defendant's argument continues, the Secretary, having created classes of highway motor vehicles with which semitrailers and trailers are customarily used, determined that certain factors would cause the inclusion of

particular trucks in one of the above three classes. These factors are: (1) the weight of the truck, and (2) whether the truck is equipped to tow heavy-duty trailers (*i.e.*, whether it is "equipped for use in combinations"). Thus, the defendant argues that the Secretary has already undertaken the necessary inquiry into whether a truck is of the "type" with which heavy-duty trailers are "customarily used." Therefore, the defendant asserts that no further inquiry, into whether a particular type of truck is customarily used to tow heavy-duty trailers, is necessary.

Under the Government's argument, a taxpayer is not permitted to demonstrate that its trucks are not of a type customarily used in combination with trailers. Instead, the taxpayer is subjected to an irrebuttable presumption under which its trucks are taxed without regard to their customary usage. As long as the trucks involved are within the weight categories set out in Treas.Reg. § 41.4482(b)–1(d) and are equipped for use in combination with heavy-duty trailers (*i.e.* equipped with pintle hooks), the IRS argues that that is sufficient to impose the highway use tax, without any regard to whether the vehicle is customarily used in combination with heavy-duty trailers. However, this Court finds that the Government's position directly conflicts with the language of sections 4481 and 4482, with the language of the Government's own regulations and interpretations, and with prior judicial determinations.

The plaintiff, in opposing the defendant's motion, argues that the classification of its trucks as truck-trailer combinations was arbitrary and contrary to statute. Specifically, the plaintiff argues that sections 4481 and 4482 *require* that a truck may not be classified as a truck-trailer combination unless a factual inquiry reveals that, on an industry-wide basis, vehicles of the type in question are customarily used in combination with trailers. The plaintiff asserts that it does not "customarily use" its trucks to tow heavy-duty trailers and that the mere fact that its trucks are "equipped

for use in combination" with such trailers does not warrant their being classified as truck-trailer combinations. It thus asserts that it should be allowed to factually rebut the Government's classification of its vehicles by proving which of its vehicles are customarily used in combination with heavy-duty trailers.

In response, the Government has stated that the customary use of trucks and trailers is indeed relevant, but it argues that the "customarily used" test applies to the *trailers,* rather than to a particular type of vehicle. The Government's construction of the statute is illustrated by its hypothetical example in which it concludes that a trailer which is used only 10 days out of the 300 total days that a truck is operated is nevertheless "customarily used" with that vehicle. At oral argument on this matter, the Government stated that such a determination rests upon its interpretation of the statutes and the regulations that, regardless of the extent of the trailer's usage, *any* usage establishes its "customary use" with trucks of the type in question. In short, if a trailer is towed but once a year by a particular truck, such one-time use becomes, under the Government's definition, the customary usage contemplated by the highway use tax statutes and regulations, and the pintle hook equipped trucks should be taxed as if they all were customarily used in combination with the single trailer.

However, the Government's position completely ignores the underlying theory upon which highway use taxation is premised. In basing the relative amount of the tax upon the concept of gross vehicle weight, Congress sought to directly correlate the burden of the tax with the physical burden which the type of vehicle in question would presumably place upon the highways. If a vehicle customarily tows a trailer, then it is reasonable to include the weight of the trailer, together with the weight of its customary load, in the computation of the vehicle's taxable gross weight, since the latter would represent a fair determination of both the typical weight of the vehicle and its physical wear and tear

upon the highway. Accordingly, the focus of the highway use tax is squarely upon the assumed weight of the vehicle, and, as such, only trailers which are customarily towed by such trucks can logically be combined with the weight of the trucks themselves. This interpretation of the highway use tax is confirmed by the Treasury Regulations which expressly state that "the base of the tax" is the gross weight of the vehicle, not the weight of the trailer, and that the weight of the trailer is only included in the gross weight of the vehicle when the trailer is customarily used in combination with that particular type of highway motor vehicle. 26 C.F.R. § 41.4482(a)–1(b).

Moreover, the Government's own documents reveal that the IRS had originally adopted the same position as the plaintiff herein (*e.g.,* a reasonable interpretation of the customary use standard). A "Conference Memorandum," dated April 25, 1957, obtained by counsel in the *L.E. Myers Co.* companion case pursuant to a request under the Freedom of Information Act, 5 U.S.C. § 552, documents a meeting of upper echelon representatives of the Treasury Department and of the IRS to discuss application of the highway use tax provisions to utility trucks, such as those owned by the plaintiff herein. The meeting's discussion centered on two significant issues. The first issue involved the meaning to be ascribed to the phrase "equipped for use in combinations," contained in the Treasury's own regulations. The second issue involved a discussion of whether or not trucks of the type described therein should be taxed as combination units merely because they are equipped with a pintle hook. In answer to these questions, the conference attendees concluded:

> On the first question, the group noted that *the Use Tax Regulations contain no definition of the expression "equipped for use in combinations".* This being the case, *a rule of reason can be, and should be, applied in our interpretation of the expression.* Thus, a utility truck equipped with a body especially designed for the transportation of

men, tools, and equipment needed in the construction, maintenance, and repair of telephone lines, gas lines, and the like *should not be considered as "equipped for use in combinations" merely because the truck is equipped with a pintle hook or other coupling device.* [Emphasis supplied.]

Shortly thereafter, in Rev.Rul. 57–547, 1957–2 C.B. 789, the Government recognized the unreasonableness of interpreting the phrase "equipped for use in combinations" as requiring the classification of a vehicle as a combination unit based solely on the presence of a pintle hook. As a result, the IRS stated that a utility truck of a type "designed for transportation of personnel, tools, and equipment, such as those used by public utility companies in the maintenance and installation of poles, lines, pipe conduits, etc., which is equipped with a pintle hook or similar coupling device for pulling a pipe or pole dolly, tool or equipment trailer, or other similar lightweight trailer, is not 'equipped for use in combinations.'" On the basis of this ruling, the IRS classified utility trucks, equipped with a pintle hook, as single units for purposes of reporting federal highway use tax liability. Moreover, the IRS's own publications informed taxpayers that utility trucks were not taxable as combination units. *See* Federal Highway Use Tax on trucks, trucktractors and buses, IRS Publication 349 (Rev. May 1973) (all utility trucks designed to transport personnel, tools, and equipment * * * are considered single units even though they are equipped with a pintle hook or similar coupling device for occasionally pulling dollies, equipment trailers, or other lightweight trailers).

In Rev.Rul. 75–297, 1975–2 C.B. 443, the IRS interpreted the use tax schedule, contained in Treas.Reg. § 41.4482(b)–1(d), as follows:

> Section 41.4482(b)–1(d) of the Highway Motor Vehicle Use Tax Regulations prescribes a schedule of taxable gross weights for different categories of vehicles for the period after June 30, 1969. Among the categories shown in the

schedule are "single units" and "trucktrailer combinations."

> \* \* \* \* \* \*

> For purposes of the tax imposed by Section 4481 of the Code, a truck equipped for use in a truck-trailer combination is one that is equipped for use *and is of the type customarily used in towing semitrailers or trailers of the type intended by the term "combinations," as used in the use tax schedule.* This term is not specifically defined in the regulations and should, therefore, be given its ordinary and usual meaning in the trucking industry. Rev.Rul. 72–109, 1972–1 C.B. 351. [Emphasis added.]

1975–2 C.B. at 443–44. As the above-quoted provision of Rev.Rul. 75–297 clearly demonstrates, the IRS continued through 1975 to interpret the phrase "equipped for use" to include the requirement that the truck not only be equipped for use in combination, but also be "of the type customarily used in towing" trailers.

Similarly, the requirement that a vehicle must, in fact, be of a type which is customarily used to tow trailers before being properly classified as a truck-trailer combination is confirmed by the IRS's statements in both Rev.Rul. 76–558, 1976–2 C.B. 360, and Rev.Rul. 74–539, 1974–2 C.B. 376. Rev.Rul. 76–558 states, in pertinent part, that:

> In the truck-trailer combination category is any truck designed primarily for the transportation of property, and which is equipped for towing trailers or semitrailers of the type that form a combination when coupled with a truck, *if trucks of the same type, when so equipped, are customarily used to tow such trailers or semitrailers.* [Emphasis added.]

1976–2 C.B. at 361. Rev.Rul. 74–539 also states the same rule:

> In the instant case, the dump trucks are equipped to tow large-capacity combine trailers * * *. *Since trucks of this type, so equipped, are customarily used with trailers of the type intended by the term combinations, the dump trucks are truck-trailer combinations for pur-*

*poses of the use tax schedule.* [Emphasis added.]

1974–2 C.B. at 376–77.

In Rev.Rul. 76–294, 1976–2 C.B. 364, the IRS attempted to reverse Rev.Rul. 57–547 and to adopt the position that the mere presence of a pintle hook permitted the classification of a vehicle as a combination unit. In this ruling, the IRS took the position that trucks, used by utilities which were equipped with pintle hooks, were to be taxed as truck-trailer combinations, rather than as single units. Specifically, Rev.Rul. 76–294 stated that one-axle trailers, having a gross vehicle weight of less than 6,000 pounds, are not "equipped for use in combinations." However, utility trucks equipped with pintle hooks capable of towing heavy-duty trailers are to be taxed as truck-trailer combinations, without regard to whether that type of truck is customarily used with heavy-duty trailers. It is interesting to note, however, that even Rev.Rul. 76–294 seems to indicate that the mere presence of the pintle hook does not mandate truck-trailer combination classification. In particular, Rev.Rul. 76–294 states that:

In the truck-trailer combination category is any truck designed primarily for the transportation of property, and which is equipped for towing trailers or semitrailers of the type that form a combination when coupled with a truck, *if trucks of the same type, when so equipped, are customarily used to tow such trailers or semitrailers.* [Emphasis added.]

1976–2 C.B. at 365.

Further, the General Counsel Memorandum (GCM)[5] relating to Rev.Rul. 76–294 stated that:

An emphasis on the hitches may leave the misleading implication that how a truck is equipped is determinative in classifying a vehicle as either a single unit or a truck-trailer combination for purposes of the highway use tax. By emphasizing the trailers customarily used by trucks of the same type, so equipped, the proposed revenue ruling will conform to G.C.M. 35261 * * * I–5047 (March 7, 1973), and G.C.M. 35826 * * * I–5047 (May 20, 1974).

GCM 36241 (April 18, 1975). Accordingly, Rev.Rul. 76–294, as finally promulgated, stated the rule that the truck-trailer combination category includes any truck which is equipped for towing trailers of the type that form a combination when coupled with a truck "if trucks of the same type, when so equipped, are customarily used to tow such trailers * * *." Note again that, according to GCM 36241, the customary use standard is still to be employed in any IRS determination.

Moreover, the GCM relating to Rev.Rul. 76–294 is only one of a series of nine GCMs, issued from June 19, 1958, through March 16, 1978, which have concluded that the "customary use" standard must be applied before reference can properly be made to the use tax schedule to determine taxable gross weight.[6] Further, the IRS

---

**5.** GCM's are legal memoranda prepared by the Chief Counsel of the IRS, pursuant to requests for legal advice from the Assistant Commissioner (Technical), in connection with proposed private letter rulings, technical advice memoranda, and revenue rulings. They are maintained by the Chief Counsel and are "frequently cited in subsequent GCM's to insure consistency, avoid duplication of research, provide a reference source, and update earlier memoranda when a position on an issue is sustained, modified, or changed within the Office of Chief Counsel." *Taxation With Representation Fund v. Internal Revenue Service,* 80–1 U.S.T.C. ¶ 9163 (D.D.C. 1980), *aff'd and remanded on another issue,* 81–1 U.S.T.C. ¶ 9252 (D.C.Cir.1981). GCM's thus state current Internal Revenue Service policies and interpretations with respect to legal issues.

*Falcone v. Internal Revenue Service,* 479 F.Supp. 985 (E.D.Mich.1979).

**6.** These GCMs, and the Revenue Rulings to which they relate, are as follows:

| GCM | Date | Revenue Ruling |
|---|---|---|
| 30742 | June 19, 1958 | 60–260 |
| 32881 | July 20, 1964 | (not given) |
| 34603 | September 9, 1971 | 72–109 |
| 35261 | March 7, 1973 | 74–539 |
| 35262 | March 7, 1973 | 74–426 |
| 35826 | May 20, 1974 | 74–539 |
| 36241 | April 18, 1975 | 76–294 |
| 37339 | December 2, 1977 | 78–156 |
| 37463 | March 16, 1978 | (not given) |

has promulgated thirteen revenue rulings, from 1957 to 1978, which have followed the statutory "customary use" test in determining whether vehicles should be classified as single units or as truck-trailer combinations.[7] Even in recently changing its published position regarding the effect of pintle hooks, the IRS acknowledged that:

> A number of G.C.M.s discuss the proper method of classifying vehicles as single units or as truck-trailer combinations. The G.C.M.s state that in order to classify a particular vehicle as a taxable truck-trailer combination, *there must first be an evidentiary finding that on a nation-wide basis, trailers are customarily used with the type of truck in question.* * * * * * G.C.M. 30742, A–626788 (June 19, 1958), pertaining to Rev.Rul. 60–260, 1960–2 C.B. 347, points out that while the words "customarily used" with reference to semitrailers and trailers appear not [only] in sections 4481(a) and 4482(b), but also in Treas.Reg. §§ 41.-4482(a)–1 and 41.4482(b)–1, the words "equipped for use in combinations" appear only in the use tax schedule. The G.C.M. concludes, therefore, that it must first be determined whether trailers are "customarily used" with the type of truck in question. Only after that determination is made, is the use tax schedule consulted to determine the taxable gross weight.
>
> \* \* \* \* \* \*
>
> In light of the foregoing *we are hereby reversing our prior position* and adopting the position that the taxability of a vehicle as a truck-trailer combination rests solely on whether or not the vehicle is equipped to tow semitrailers or trailers. Accordingly, the following G.C.M.s are revoked: * * * * * G.C.M. 30742, A–626788 (June 19, 1958); * * * * * G.C.M. 32881, I–1192 (June 20, 1964); * * * * *

G.C.M. 35261, I–5047 (March 7, 1973) and G.C.M. 35826, I–5047–72 (May 20, 1974); and * * * * * G.C.M. 36241, I–436–74 (April 18, 1975). In addition, to the extent they conclude that an evidentiary customary-use test is to be applied in determining whether a particular vehicle is a truck-trailer combination, the following G.C.M.s are modified: *Technical Study Project 68–40,* G.C.M. 34603, I–4208 (Sept. 9, 1971): * * * * * G.C.M. 35262, I–5117 (March 7, 1973); * * * * * G.C.M. 37339, I–368–76 (Dec. 2, 1977); and * * * * * G.C.M. 37463, I–5–77 (March 16, 1978). [Emphasis added.]

GCM 38962, CCH *IRS Positions Rep.* ¶ 1164–65 (February 16, 1983).

The Government argues against the plaintiff's use of the above-discussed revenue rulings in that each addressed a problem different from the issue raised in this case. For example, in Rev.Rul. 75–297, the trucks in question were described as trucks with at least two axles and with actual unloaded weights of at least 9,500 pounds. All of the trucks are "equipped with hitches specially designed to tow lightweight portable grain elevators weighing about 1,100 pounds." The question addressed was whether those trucks fell within the "single unit" or "truck-trailer combination" category. Particularly, Rev.Rul. 75–297 explains that:

> [A] truck equipped for use in a truck-trailer combination is one that is equipped for use and is of the type customarily used in towing semitrailers or trailers of the type intended by the term "combinations," as used in the use tax schedule. This term is not specifically defined in the regulations and should, therefore, be given its ordinary and usual meaning in the trucking industry.

---

These GCMs are currently not in the public domain, but they are discussed in GCM 38962, *supra,* which revokes many of these GCMs and modifies the others.

**7.** Rev.Rul. 57–547, 1957–2 C.B. 789; Rev.Rul. 60–260, 1960–2 C.B. 347; Rev.Rul. 72–109, 1972–1 C.B. 351; Rev.Rul. 74–539, 1974–2 C.B. 376; Rev.Rul. 74–461, 1974–2 C.B. 377; Rev.Rul. 74–513, 1974–2 C.B. 377; Rev.Rul. 75–297, 1975–2 C.B. 443; Rev.Rul. 76–558, 1976–2 C.B. 360; Rev.Rul. 76–559, 1976–2 C.B. 365; Rev.Rul. 77–36, 1977–1 C.B. 347; Rev.Rul. 78–156, 1978–1 C.B. 365; Rev.Rul. 78–208, 1978–1 C.B. 366; Rev.Rul. 78–314, 1978–2 C.B. 269.

1975–2 C.B. at 444. The ruling goes on to state that lightweight portable grain elevators are not of the type ordinarily and usually considered as forming a "combination" when coupled with a truck and that trailers which do form such "combinations" are of a heavier weight. Therefore, since similarly equipped trucks of this type "are not customarily used with trailers of the type intended by the term combinations, [*i.e.*, they are not equipped for use in "combinations"] the trucks are not truck-trailer combinations for purposes of the highway use tax schedule, but fall instead within the single unit category." The Government, however, cannot escape the ruling's express use of the "customary use" standard.

The Government, while conceding that the language contained in the revenue rulings was "ill-chosen," "inartfully worded," and "not well-chosen by the drafters," argues that such language must be analyzed for consistency with the statute. Therefore, the Government argues that the only issue addressed in each of the above revenue rulings was whether the trailers in question were heavy-duty trailers and therefore of a type which would subject the corresponding truck to "truck-trailer" combination status. While this Court recognizes that each of the above revenue rulings addresses both the weight and the capacity of the trailer issues, it notes that all of the above revenue rulings contain express language flatly stating that the customary usage of the truck, with heavy-duty trailers, must be present as a condition to "truck-trailer" combination classification. As a result, this Court finds that the plaintiff's interpretation of the above revenue rulings is reasonable in light of the language used by the IRS and that it has a right to rely on them as long-established practice. The Court agrees with the plaintiff that this "ill-chosen" language accurately expressed the pre-1984 state of the law. Only now, almost twenty years later, in its attempt to rewrite history, does the Government decide that its earlier language was "inartful."

Further, the Government argues that the plaintiff's reliance on these past "inartfully worded" revenue rulings is misplaced, since they failed to address the "customary use" issue. As a result, the Government relies on Rev.Rul. 76–294 as controlling, since it merely "clarified" the ambiguities arising out of Rev.Rul. 57–547 and upheld the IRS's use of the "equipped for use" test. However, the effect of Rev.Rul. 76–294, on Rev.Rul. 57–547, was stated by the IRS as follows in Rev.Rul. 76–294:

> Rev.Rul. 57–547 is *modified* to state the position on utility trucks equipped with pintle hooks or similar coupling devices to tow heavier trailers. [Emphasis supplied.]

In using the word "modified," rather than the word "clarified," the IRS clearly indicates that it is changing its position from that originally set forth in Rev.Rul. 57–547. If the holding of Rev.Rul. 76–294 was consistent with Rev.Rul. 57–547, the IRS undoubtedly would have used the word "clarified," rather than the word "modified," to describe the effect of Rev.Rul. 76–294. The fact that the IRS considered it necessary to announce a change of position supports the plaintiff's justifiable reliance on Rev.Rul. 57–547 with respect to the matter at issue herein.

■ Accordingly, the statutes and the regulations, adopted in 1956, expressly incorporate the statutory "customary use" standard, and both the revenue rulings and the GCMs, commencing in 1957 and continuing for nearly 20 years, uniformly enunciate the same "customary use" standard. These revenue rulings and GCMs constitute "a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent" and are entitled to particular force. *Corn Products Refining Co. v. Commissioner,* 350 U.S. 46, 52–53, 76 S.Ct. 20, 24–25, 100 L.Ed. 29 (1955) (longstanding Treasury position in a published GCM given deference). As a result, the long history of the application of the highway use tax provisions supports the plaintiff's argument that it should not be subject to an irrebuttable presumption based merely upon the "equipped for use" standard.

It should also be noted that Congress re-enacted the highway use tax statutes in 1970, 1976, and 1978, without ever changing the customary use requirement.[8] Congress thereby appears to have implicitly ratified the IRS's interpretation of the highway use tax statutes and regulations, contained in its published revenue rulings and GCMs. As discussed above, the revenue rulings and the GCMs, on this issue, evidence a consistent and continuing administrative interpretation of the statutes and regulations which was known to the Congress and to the taxpayers. If Congress had disagreed with this interpretation, it could have removed the customary use test, from the statute, at any time.

It was not until the Highway Revenue Act of 1982, signed by the President on January 6, 1983, that an amendment was added to the highway use tax provisions that effectively enacted the Government's position enunciated in this case. On that date, the following language to the highway use tax provisions was added, as section 4482(c)(5):

(5) CUSTOMARY USE. A semitrailer or trailer shall be treated as customarily used in connection with a highway motor vehicle if such vehicle is equipped to tow such semitrailer or trailer.

This amendment adopts the "equipped-for-use" test urged by the Government, but does so only prospectively for periods beginning on or after July 1, 1984. As a result, after July 1, 1984, a particular type of truck may, in fact, never be used in conjunction with a trailer, but it will nevertheless be classified as a truck-trailer combination if it is equipped with a pintle hook or other similar coupling device enabling it to tow a trailer.

The very fact that the Treasury Department deemed it necessary to approach the Congress to amend the highway use tax provisions to adopt its "equipped for use" interpretation, and that the Congress deemed it such a significant change that it postponed its effective date for eighteen months, indicates that the law, until that date, required a determination that a truck is of a type customarily used in combination to tow trailers if it is to be taxed as a combination unit.

The issue presented in the instant case has not previously been addressed by this Court or by this Court's predecessor, the United States Court of Claims. Three federal courts of appeal have considered the issue, however, and have reached conflicting results. First, in *Pacific Gas & Electric Co. v. United States*, 664 F.2d 1133 (9th Cir.1981), the Ninth Circuit held that utility trucks could not be classified as truck-trailer combinations merely because they were equipped with pintle hooks. In that court's view, the "customary use" standard is required by the clear and unambiguous language of the statutes and the treasury regulations, with the result being that any interpretation of the statute which would ignore the "customary use" standard is contrary to the statute and therefore invalid and of no effect. *Id.* at 1135–36. Particularly, the court stated that:

The statute and the regulations make it clear that trailers are only to be included in the gross taxable weight of the truck if that type of trailer is customarily used with such type truck. Hence, *the requirement of such "customary use"* set forth in the statute and the regulations *requires a factual determination* of whether the type trailer is customarily used in connection with a motor vehicle of the same type as the motor vehicle (truck) of Pacific, *rather than an arbitrary finding that any truck equipped with a pintle hook is one customarily so used in combination.*

\* \* \* \* \* \*

An interpretation of the statute or regulations which permits the Internal Revenue Service to classify a vehicle as a "truck trailer" combination merely because the vehicle is "equipped for use in combination" with trailers, such as equipped with a pintle hook, without first

8. Pub.L. No. 91–605, 91st Cong., 2d Sess. § 303(a)(7) (1970); Pub.L. No. 94–280, 94th Cong., 2d Sess. § 303(a)(7) (1976); Pub.L. No. 95–599, 95th Cong., 2d Sess. § 502(a)(6) (1978).

determining that such trailer or semi-trailer is the type customarily used in combination with such vehicle is erroneous and any regulation permitting the same is contrary to the statute and therefore invalid and of no effect. [Emphasis added.]

*Id.* Accordingly, the Ninth Circuit reversed and remanded the case to the U.S. District Court for the Northern District of California for a factual determination as to whether "trailers and/or semitrailers are customarily used in connection with highway motor vehicles of the same type operated" by PG & E. *Id.* at 1136.

The district court, on remand, found that "customary use" requires that heavy-duty trailers be used with a particular type of truck more than fifty percent of the time. *Pacific Gas and Electric Co. v. United States*, 554 F.Supp. 345, 346 (N.D.Calif. 1983). Thus, the district court expressly rejected the Government's "customary use" argument in holding that:

> The government's position is untenable. It reduces the statutory language to a tautology, with the effect that a taxpayer who hauls a trailer once a year would have to pay the same tax as one who always hauls a trailer, for the reason that he "customarily" hauls the trailer but once. To adopt such a definition of customary use would be inconsistent with the mandate of the Ninth Circuit to avoid "arbitrary finding[s]" of custom.

*Id.* at 346. As a result, while PG & E had various trucks "equipped" with pintle hooks, these trucks were not customarily used to pull heavy-duty trailers, and, as such, could *not* be taxed by the IRS as truck-trailer combinations.[9] *Id.* at 347.

After reviewing the reasoning undertaken by the district court in California, this Court believes that that reasoning makes sense and that, if this case proceeds to trial in this Court, the statutory "customary use" requirement will be interpreted "as meaning more than fifty percent of the time." *Id.* at 346. Thus, if the plain-

tiff can establish that the subject vehicles were not used more than fifty percent of the time to haul heavy-duty trailers, the IRS's classification must be changed. This Court will focus its customary use determination on the vehicle, rather than on the trailer.

Second, the Eighth Circuit reached the opposite result in *Northern States Power Co. v. United States*, 503 F.Supp. 1182 (D.Minn.1981), *aff'd,* 663 F.2d 55 (8th Cir. 1981), *cert. denied,* 456 U.S. 965, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982), wherein the court adopted the opinion of the U.S. District Court for the District of Minnesota, which had held that no factual determination of "customary use" is necessary. The Minnesota district court observed that "[t]he statute does not specify that the trailer actually be customarily used with the taxable vehicle, but only that the trailers be of the kind customarily used with that *type* of vehicle. No evidentiary showing that a particular taxpayer's vehicles are so used is required." *Northern States Power Co. v. United States,* 503 F.Supp. 1182, 1184 (D.Minn.1981). Further, the district court observed that Congress delegated to the Secretary the broad authority to prescribe regulations for determining gross vehicle weights, and this promulgation of regulations which apply the "equipped for use" standard as a means of classifying vehicles in the truck-trailer category was therefore within his discretion. *Id.* See also *Public Service Co. of Colorado v. United States,* No. 80–M–660 (D.Colo. Oct. 25, 1982).

Finally, the Seventh Circuit, in a split two-to-one decision, endorsed the Eighth Circuit's decision in *Northern States Power Co. v. United States, supra,* by upholding the IRS's "equipped for use" test as a reasonable exercise of the Secretary's discretion. *Northern Illinois Gas Co. v. United States,* 554 F.Supp. 371 (N.D.Ill. 1983), *aff'd,* 743 F.2d 539 (7th Cir.1984). In so holding, the circuit court stated that:

---

9. The district court found, however, that PG & E's line trucks, cable pullers, and underground

heavy winch trucks were used more than fifty percent of the time with heavy-duty trailers.

We find that the Secretary's "equipped for use" standard is a reasonable implementation of the "customarily used" standard contained in the statute. It is not unreasonable to assume that vehicles are equipped for use with heavy trailers for the purpose of using them with heavy trailers. Thus, it was not unreasonable for the Secretary to rule that a vehicle equipped for use with a heavy trailer is, for the purposes of section 4481, a type of vehicle customarily used with a heavy trailer. It may be, as the appellants contend, that many vehicles that are equipped for use with heavy trailers are not customarily used with heavy trailers. However, in permitting the Secretary to create general classifications to be used in determining taxable gross weight in particular cases, Congress clearly was not insisting on accuracy in every case. Rather, it was acknowledging implicitly that formulas and classifications that may be overbroad or underbroad are often necessary to the efficient administration of a tax collection system.

743 F.2d at 542. Judge Pell, however, in his dissent, adopted the Ninth Circuit's decision in *Pacific Gas and Electric Co. v. United States, supra,* as correctly resolving this issue. Specifically, Judge Pell stated that:

Congress imposed a tax on the use of highways. Logically the intent of Congress was that the highway use tax bear most heavily on those whose use of the highway caused the most wear and tear. Imposing the tax on those types of trucks that are customarily used with heavy trailers is a reasonable method of determining which types of trucks should bear the burden of the tax. The customary-use test is not a fine-tuned means of apportioning the burden of the use tax, but it is related to the actual use of the highways by a type of truck. The equipped-for-use test, in contrast, is inconsistent with Congress's attempt to apportion the tax equitably. The equipped-for-use test is not reflective of the actual use of heavy trailers. A pintle hook, by

itself, causes no additional wear on a highway. As the evidence appellant attempted to introduce demonstrates, utility trucks equipped with pintle hooks more often than not are *not* used in combination with heavy trailers.

*Id.* at 543–544.

Notwithstanding both the decision of the Eighth Circuit, in *Northern States Power Co., supra,* and the split decision of the Seventh Circuit, in *Northern Illinois Gas Co., supra,* in which both held in favor of the Government, this Court believes that the Ninth Circuit's decision, in *Pacific Gas and Electric Co., supra,* is the more well reasoned decision in light of the above discussion. In addition, this Court would note two further matters which serve to detract from the precedential value to be accorded the decisions of both the Eighth Circuit and the Seventh Circuit. First, the Eighth Circuit decision adopted the reasoning of the initial decision of the U.S. District Court for the Northern District of California in granting the Government's motion for summary judgment, prior to that decision being reversed by the Ninth Circuit. *Pacific Gas and Electric Co. v. United States,* 554 F.Supp. 345 (N.D.Calif.1980). Subsequent to the *Northern States Power Co.* decision, the Ninth Circuit reversed the decision of that district court, and, on remand, that same district court concluded, as discussed above, that the statutory "customary use" test is not equivalent to the IRS's "equipped for use" test. Second, the weight to be accorded the Seventh Circuit's decision is somewhat diluted in that the appellate panel was composed of two Seventh Circuit judges and one Eighth Circuit judge sitting by designation. The Seventh Circuit judges split over the issue discussed herein, with Judge Flaum adopting the Eighth Circuit's decision and with Judge Pell adopting the Ninth Circuit's decision. Judge Henley, of the Eighth Circuit, formed the majority by voting in favor of adopting his own circuit's prior interpretation.

In addition, this Court's predecessor's decision in *North American Van Lines, Inc.*

*v. United States,* 144 Ct.Cl. 641, 169 F.Supp. 252, *cert. denied,* 359 U.S. 1011, 79 S.Ct. 1148, 3 L.Ed.2d 1036 (1959), contrary to the Government's assertions, lends no support to the Government's contention that the statutory "customary use" standard may be ignored. In that case, the taxpayer actually used trailers in combination with its trucks and did not dispute the classification of its vehicles as "truck-trailer" combinations. *North American Van Lines, Inc., supra,* 144 Ct.Cl. at 644–45, 169 F.Supp. at 254. Instead, the taxpayer challenged the authority of Congress and of the Secretary of the Treasury to determine the taxable gross weights of the maximum loads carried on its trailers with reference to the customary weights of such loads, rather than the actual weights carried on the taxpayer's trailers. *Id.* The Court of Claims found that there was no constitutional impediment to the imposition of the tax based upon customary or assumed weights and that the treasury regulations, which fairly and accurately specified average maximum load weights, were consistent with the taxing statutes and therefore reasonable. *North American Van Lines, Inc., supra,* 144 Ct.Cl. at 646–47, 169 F.Supp. at 255–56. As a result, the *North American Van Lines* court held that, where a trailer is customarily used in combination with a particular type of vehicle, the weights assigned to the loads carried thereon (as well as the trailers themselves) may properly be determined in accordance with the customary or average industry weights. *Id.* It does not in the least suggest, however, that a vehicle may be taxed as a "truck-trailer" combination when vehicles of the same type are not customarily used in combination with a trailer.

Further, the Government's reliance on *Dickman v. Commissioner,* —— U.S. ——, 104 S.Ct. 1086, 79 L.Ed.2d 343 (1984), is misplaced. In *Dickman,* the U.S. Supreme Court addressed an alleged departure by the IRS from its prior administrative construction of the gift tax statutes and regulations. As a result of the broad scope of the language contained in the gift tax regu-

lations, the Court noted that the gift taxability of interest-free loans was "not without a reasonable and well-established foundation." *Dickman v. Commissioner, supra,* —— U.S. at ——, 104 S.Ct. at 1094, n. 11, 79 L.Ed.2d at 354, n. 11. However, in the instant case, the Commissioner's action is neither consistent with the "customary usage" test set out in section 4481, nor with the applicable regulations set out thereunder, nor with the revenue rulings issued contemporaneously with such regulations. Thus, the Commissioner cannot support his action as merely "changing his interpretation." In fact, the Commissioner's position in this case appears to this Court to represent an attempt to change the highway use tax provisions without Congressional action or approval.

■ It is axiomatic that in order for the IRS's *regulations to be valid* that they must not be inconsistent with the statutory provisions. In *Manhattan General Equipment Co. v. Commissioner of Internal Revenue,* 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936), the U.S. Supreme Court noted that:

> The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law—for no such power can be delegated by Congress—but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity. And not only must a regulation, in order to be valid, be consistent with the statute, but it must be reasonable. [Citations omitted.]

*See United States v. Larionoff,* 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977) (regulations, in order to be valid, must be consistent with the statute under which they are promulgated); *Mohasco Corp. v. Silver,* 447 U.S. 807, 825, 100 S.Ct. 2486, 2496, 65 L.Ed.2d 532 (1980) (an agency's interpretation of the statute cannot supersede the language chosen by Con-

gress). *See also General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976); *Security and Exchange Comm. v. Sloan*, 436 U.S. 103, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978).

Recently, in *Thomas International Ltd. v. United States*, 6 Cl.Ct. 414, at 420 (1984), this Court held that:

> As a general matter the regulations of an administrative agency charged with the duty to carry out a congressional mandate are entitled to great weight; but this general principle of deference only sets the framework for judicial analysis and does not displace it. *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24 [102 S.Ct. 821, 827, 70 L.Ed.2d 792] (1982). It is hornbook law that the Treasury has no power to promulgate a regulation which either adds an exception to or supplies an omission in a statute which it believes Congress should have included but did not. *Commissioner v. Acker*, 361 U.S. 87 [80 S.Ct. 144, 4 L.Ed.2d 127] (1959); *Helvering v. Credit Alliance Corp.*, 316 U.S. 107, 113 [62 S.Ct. 989, 992, 86 L.Ed. 1307] (1942); *Caterpillar Tractor Co. [v. U.S.]*, 218 Ct.Cl. [517] at 526, 589 F.2d [1040] at 1045; *Durbin Paper Stock Co. v. Commissioner*, 80 T.C. 252, 261 (1983).

It necessarily follows that a published revenue ruling, which is inconsistent with the Internal Revenue Code, must likewise be regarded as "a mere nullity." *Idaho Power Co. v. Commissioner*, 477 F.2d 688 (9th Cir.1973), *rev'd on other grounds*, 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974); *First National Bank of Midland, Texas v. United States*, 423 F.2d 1286 (5th Cir.1970). Therefore, since Rev.Rul. 76–294 mandates the application of the "equipped for use" standard, rather than the "customarily used" standard expressly required by sections 4481(a) and 4482(b) of the statute, it must be deemed to be a mere nullity. In adopting this standard, the ruling completely ignores the possibility that trucks, of the type involved herein, may not be customarily used with any semitrailer or trailer.

Moreover, although the Government raises the Pandora's box "horror" of a trial on the merits of "customary use," both in this case and in a potential avalanche of cases still administratively pending, it must be noted that its assessment is presumptively correct, and it is the taxpayer, not the Government, who must carry the burden of proving that its vehicles are not of the type which the Government considers them to be. If the taxpayer is unable to prove that its vehicles are not of a type customarily used in combination with a trailer, then the assessment of additional highway use taxes will be upheld. However, if the taxpayer can prove that its vehicles are not of a type customarily used in combination with a trailer, then there can be no basis for assessment of the additional taxes, since the taxpayer would have established the absence of the statutory pre-condition to imposition of such additional taxes.

If this Court is correct in its reading of the applicable law and treasury regulations, the plaintiff, and similarly situated taxpayers, has the right to contest its highway use tax assessments regardless of the administrative burden placed on the IRS, the litigation burden placed on the Department of Justice, or, for that matter, the potential burden on the resources of this Court. As a result, the IRS's Pandora's box argument is entitled to little credence. If the IRS persists in its attempts to collect highway use taxes contrary to the authorizing legislation, the responsibility for opening the Pandora's box lies with the IRS.

In administering this tax, the IRS now relies on an irrebuttable presumption that a truck, which merely is equipped with a pintle hook, is in fact a truck of the type with which heavy-duty trailers are customarily used. The IRS has taken this position without offering any evidentiary support and without giving any consideration to the fact that the utilities may have equipped particular trucks with pintle hooks, not so that they may be used customarily to tow trailers, but so that they may be so used only in the event of emergencies. In particular, the IRS has classified in this and the companion cases, for example, the fol-

lowing types of vehicles as highway motor vehicles which customarily haul heavy-duty trailers: dump trucks, aerial lift trucks, mobile cranes, digger derricks, and concrete mixers. While the evidence to be presented at trial may prove to the contrary, this Court, at this time, is hard-pressed to conceive of the above types of vehicles customarily hauling heavy-duty trailers. As such, this Court finds the IRS's classification of those vehicles (*e.g.,* truck-trailer combination) to be facially absurd.

In *Heiner v. Donnan,* 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932), the United States Supreme Court held that a taxing statute which relied upon an irrebuttable presumption was unconstitutional. In so holding, the Court stated that "a statute which imposes a tax upon an assumption of fact which the taxpayer is forbidden to controvert, is so arbitrary and unreasonable that it cannot stand under the [Fifth] Amendment." *Id.* at 325, 52 S.Ct. at 361.

In any case, while the Government may assure ease and certainty of administration for itself and for taxpayers asserting deficiencies, it stands the concept of administrative ease on its head to contend, as does the Government, that the presence of the pintle hook must also be dispositive of any judicial challenge by a taxpayer of the IRS's classification. In short, the Government, for administrative purposes, may view the pintle hook, or any other factor it may choose, as requiring classification as a "truck-trailer" combination. The Government, however, must nevertheless recognize the right of a taxpayer to its day in court and the opportunity of such taxpayer to prove that the elements of "truck-trailer" combination status are absent in a particular case. Such an approach more than adequately balances the Government's interest in administration of the tax laws with the taxpayer's right to prove that it does not owe the additional tax.

 Therefore, this Court adopts the plaintiff's two-prong approach to the classification of vehicles for purposes of the federal highway use tax provisions. Initially, for administrative convenience, the IRS can devise whatever classification formula it desires, within the parameters of section 4482(b). Here, the IRS has adopted the "equipped for use" standard as its classification standard. However, upon such administrative classification being challenged by a taxpayer on the basis of "customary use," the IRS must review its initial classification decision on the basis of whether the particular vehicles in dispute are customarily used in the manner so classified. If such review reveals that the taxpayer does not customarily use the subject vehicles in a manner consistent with the IRS's original classification, the IRS must reclassify the vehicles to reflect their customary use. Finally, if the taxpayer remains unsatisfied with the IRS's classification, he may seek judicial review of such classification. Under no circumstances, can this Court agree with the IRS that its administrative classification constitutes an irrebuttable presumption that neither the taxpayer can challenge nor this Court can review.

As the conflicting opinions of the three U.S. Courts of Appeal have made clear, reasonable minds can and do differ over this Court's view of the law in this matter and consequent denial of the defendant's motion for summary judgment in this case. Therefore, this Court believes that the issue presented herein, whether or not the taxpayer is entitled to a trial on the merits of customary use of its highway motor vehicles, involves a controlling question of law with respect to which there is substantial ground for difference of opinion, and that resolution of this question would materially advance the ultimate termination of the litigation. It also should be noted that this case is but one of eight cases that have already been filed in this Court (two are companion cases that have likewise been certified for review, and five are suspended awaiting this decision) and that many more cases could still be filed with this Court if this decision is not reversed. The monetary amounts potentially at issue are also not inconsiderable. At oral argument, the

plaintiff indicated that there were administratively pending some 262 cases raising this issue that involved some $6.4 million. As a result, this Court is of the opinion, pursuant to 28 U.S.C. § 1292(d)(2) (1982), that "a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation * * *," and future litigation.

## CONCLUSION

■ For the reasons stated herein, the defendant's motion for summary judgment is denied. The plaintiff is entitled to a trial on the issue of customary use, under the standards to be applied as enunciated herein.

The Court further concludes and states, pursuant to 28 U.S.C. § 1292(d)(2), as amended by section 125(b) of the Federal Courts Improvement Act of 1982 (Pub.L. No. 97–164, 96 Stat. 25, 37), that there is involved in this interlocutory opinion a controlling question of law with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from this opinion would materially advance the ultimate termination of the litigation.